Law Offices of Carl M. Varady

Carl M. Varady
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii 96813
Telephone: (808) 523-8447
Facsimile: (808) 523-8448
e-mail: carl@varadylaw.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAI'I

| | |
|---|---|
| LOVELAND ACADEMY, L.L.C., PATRICIA DUKES, PH.D., and PARENTS AT LOVELAND SCHOOL<br><br>     Plaintiff,<br><br>vs.<br><br>PATRICIA HAMAMOTO, Superintendent of the Hawai'i Department of Education, HERBERT WATANABE, Chairperson, Hawai'i Board of Education,<br><br>    Defendants. | CV02-00693 HG/LEK<br><br>PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS; MEMORANDUM IN SUPPORT OF AWARD OF ATTORNEYS' FEES AND COSTS; DECLARATION OF PATRICIA DUKES, Ph.D.; DECLARATION OF CARL M. VARADY, EXHIBITS 1.1-1.10; DECLARATION OF STANLEY E. LEVIN; DECLARATION OF ERIC A. SEITZ; DECLARATION OF IRENE E. VASEY; DECLARATION OF CYNTHIA S. NAKAMURA; EXHIBITs 1.1-1.8; CERTIFICATE OF SERVICE |

## PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

Plaintiffs, by and their attorney, Carl M. Varady, hereby submit their Motion for Award of Attorneys' Fees and Costs. This motion is made pursuant to Rule 7 of the Federal Rules of Civil Procedure and LR 54.3, and is supported by all the documents on file with the Court on the date of the hearing herein, including the attached memorandum and declarations of counsel.

Plaintiffs, by and through their attorney, Carl M. Varady, hereby move this Court make an award in the amount in the amount of:

1.    $158,805.50 in fees, $6,615.84 in GET and costs in the amount of $3,408.23, for a total of $168,829.57, to Carl M. Varady, as authorized by 20 U.S.C. § 1415 and 42 U.S.C. § 1988; and

2.    $13,600.00 in fees, $576.39 in GET and costs in the amount of $111.93, for a total of $14,288.32, to Cynthia S. Nakamura, as as authorized by 20 U.S.C. § 1415 and 42 U.S.C. § 1988.

DATED:  Honolulu, Hawai'i, May 20, 2008.

/S/ Carl M. Varady
CARL M. VARADY

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| LOVELAND ACADEMY, L.L.C., PATRICIA DUKES, PH.D., and PARENTS AT LOVELAND SCHOOL<br><br>        Plaintiff,<br><br>vs.<br><br>PATRICIA HAMAMOTO, Superintendent of the Hawai'i Department of Education, HERBERT WATANABE, Chairperson, Hawai'i Board of Education,<br><br>        Defendants. | CV02-00693 HG/LEK<br><br>MEMORANDUM IN SUPPORT OF AWARD OF ATTORNEYS' FEES AND COSTS |

**MEMORANDUM IN SUPPORT OF AWARD OF ATTORNEYS' FEES AND COSTS**

# TABLE OF CONTENTS

I.    FACTS.................................................................................  -1-

II.   ARGUMENT...........................................................................  -6-

    A.    Plaintiffs are Entitled to Fees.. ............................................  -6-

    B.    The Fees are to be Determined by the Lodestar
          ......................................................................................  -8-

        1.    The fees sought are reasonable. .................................  -9-

        2.    The hours expended were reasonable
              . ..........................................................................  -12-

            a.    The novelty or difficulty of the questions presented. .  -16-

            b.    This case required a high level of skill
                  . ..................................................................  -16-

            c.    The work required a significant commitment of time
                  precluding other work.
                  . ..................................................................  -16-
            d.    The fee is within what is customarily charged
                  . ..................................................................  -16-
            e.    The fee was primarily contingent. .............................  -17-

            f.    The time limitations imposed were significant.
                  . ..................................................................  -17-

            g.    The award..........................................................  -17-

            h.    Experience and reputation of counsel
                  . ..................................................................  -18-
            i.    The case was undesirable.......................................  -18-

            j.    The relationship with the clients................................  -18-
            k.    The award sought is consistent with those in similar cases.
                  . ..................................................................  -19-

l.    The costs sought are reasonable and necessary.
. .................................................................... -19-

III.    CONCLUSION. ........................................................... -21-

# TABLE OF AUTHORITIES

Cases

*Armstrong v. Davis*, 318 F.3d 965 (9th Cir. 2002)
................................................................................................................. -8-

*Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997)
................................................................................................................. -10-

*Barlow-Gresham Union High Sch. Dist. v. Mitchell*, 940 F.2d 1280 (9th Cir. 1991).
................................................................................................................. -6-

*Barrios v. California Interscholastic Federation,* 277 F.3d 1128 (9th Cir. 2002)
................................................................................................................. -7-

*Bell v. Clackamas County*, 341 F.3d 858 (9th Cir. 2003)
................................................................................................................. -10-

*Blanchard v. Bergeron*, 489 U.S. 91 (1988)
................................................................................................................. -9-

*Blum v. Stenson*, 465 U.S. 886 (1984)
................................................................................................................. -9-, -10-

*Boston & Marine Corp. v. Moore*, 776 F.2d 2 (1st Cir. 1985)
................................................................................................................. -13-

*Cabrales v. County of Los Angeles*, 935 F.2d. 1050 (9th Cir. 1991)
................................................................................................................. -9-, -12-

*Chalmers v. City of Los Angeles*, 796 F.2d 1206 (1985), *amended*, 808 F.2d 1373
(9th Cir. 1987).................................................................................................. -9-

*Cunningham v. County of Los Angeles*, 879 F.2d 481 (9th Cir. 1990) *cert. denied*
493 U.S. 1035. ................................................................................................. -8-

*D'Emanuele v. Montgomery Ward & Co. Inc.,* 904 F.2d 1379 (9th Cir. 1990
................................................................................................................. -9-

*Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115 (9th Cir. 2000)
.................................................................................................... -15-

*FMC Corp. v. Varonos*, 892 F.2d 1308 (7th Cir. 1990)
.................................................................................................... -13-

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992)
.................................................................................................... -10-

*Gillbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999)
.................................................................................................... -12-

*Harris v. Marhoefer*, 24 F.2d 16 (9th Cir. 1994)
.................................................................................................... -19-

*Hensley v. Eckerhart*, 461 U.S. 424 (1983)
................................................................................... -6-, -7-,-8-, -12-

*International Woodworkers of America AFL-CIO v. Donovan*, 792 F.2d 762 (9th Cir. 1986).
.................................................................................................... -19-

*Masotti v. Tustin Unified Sch.Dist.*, 806 F.Supp. 221 (C.D. Cal 1992)
.................................................................................................... -7-

*McSomebodies (No. 1) v. Burlingame Elementary Sch. Dist.*, 897 F.2d 974 (9th Cir. 1989).
.................................................................................................... -6-

*Miller v. Los Angeles County Board of Education*, 827 F.2d 617 (9th Cir. 1987)
.................................................................................................... -9-

*Missouri v. Jenkins* by Agyei, 491 U.S. 274, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989).
.................................................................................................... -10-

*Otsby v. Oxnard Union High,* 209 F. Supp. 2d 1035 (C.D. Cal. 2002
.................................................................................................... -7-

*Parents of Student W v. Puyallup Sch. Dist. No. 3*, 31 F.3d 1489 (9th Cir. 1994)
.................................................................................................... -7-

*Pennsylvania v. Delaware Valley Citizen's Council*, 483 U.S. 711 (1987)
.................................................................................................... -8-

*Schwartz v. Secretary of HHS*, 73 F.3d 895 (9th Cir. 1995)
.................................................................................................... -10-

*Seattle School Dist. No. 1 v. B.S.,* 82 F.3d 1493 (9th Cir. 1986)
.................................................................................................... -19-


   <u>Statutes and Regulations</u>

20 U.S.C. § 1415 (e)(4)(B). ..................................................................... -6-


   <u>Other Authorities</u>

S.Rep. 94-1011, 94th Cong. 2d.Sess. *reprinted in* 1976 U.S. CONG. & ADMIN.
NEWS 5908. ............................................................................................... -6-

# I.  FACTS.

Plaintiffs instituted this action arising under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. 1400-1487, and 42 U.S.C. § 1983, in 2002, after the Department of Education ("Department") refused to pay for special education and related services for IDEA-eligible children placed at Loveland Academy, L.L.C., by settlement agreement, hearing officer's decision or IEP.  In total, the Department was failed and was ordered, as a result of this case, to pay $1,136,707.84.

Loveland Academy, L.L.C., (hereafter "Loveland/Lokahi"), is a special school designed to provide a broad spectrum of special education and mental health services to children eligible for such services under IDEA on a day-treatment basis.  Declaration of Patricia Dukes, Ph.D. ¶ 2. In the day-treatment environment, the children attend school and after-school activities at Loveland, and then return to their homes in the afternoon when these activities are concluded.  *Id.*

Loveland was granted accreditation by the Commission on Accreditation of Rehabilitation Facilities ("CARF").  *Id.* ¶ 3.  CARF is an independent non-profit organization that provides accreditation in the human services field, focusing on the areas of rehabilitation, employment, child and family, and aging services.  *Id.* Loveland still is a CARF-accredited facility providing day treatment for children with autism in Hawai'i. *Id.*

Prior to July 1, 2002, Loveland provided day-treatment services to children pursuant to contract with the Hawai'i Department of Health (the "Contract"), which set billing rates for children placed at Loveland under the Contract.  *Id.* ¶ 4. The Contract expired on June 30, 2002, and the Department of Education became responsible for providing autism services after that date, in place of the Department of Health.  *Id.* ¶ 5.  On July 1, 2002, Loveland/Lokahi's day-treatment rates were raised and subsequent increases occurred in January 2003 and July 2003.  *Id.* The day-treatment rates were raised to cover increased costs associated with liability insurance, ground-lease rent and staff salaries.  *Id.*

In addition to children placed at Loveland through individualized educational plan ("IEP"), some students have been determined eligible for placement and services at Loveland through settlement agreement or decision of a hearing officer pursuant to 20 U.S.C. § 1415(f).  *Id.* ¶ 6.

From the time the Contract expired June 30, 2002, and through 2004, Loveland/Lokahi operated at a loss.  *Id.* ¶ 7.  Dr. Dukes, the owner, had to fund the programs, special education and related services at Loveland myself, and expended in excess of $600,000 of her own funds, took out loans and experienced other financial and personal hardship keeping Loveland open, with the expectation that she would be reimbursed.  *Id.*  However, the DOE refused to pay the current day-treatment rates for any child, including those placed at Loveland/Lokahi by

IEP, settlement agreement or hearing officer decision.  Although plaintiffs agreed

to mediate, the mediation conducted in this case failed to produce any resolution.

*Id.*

The day-treatment rates and other increases in fees formed the basis of

Loveland/Lokahi's budget. *Id.* ¶ 8. Loveland/Lokahi could not continue to operate

at a deficit, and Dr. Dukes informed the parents that Loveland/Lokahi would close

on April 2, 2004.  *Id.*  All children placed there would have had to find other

programs Hawai'i or on the Mainland.  *Id.*

On March 22, 2004, the Court granted a preliminary injunction,

ordered immediate payment in the amount of $250,000.00, which led ultimately,

after four years of further proceedings, to settlement and payment of a total amount

of $1,136,707.84 to Loveland/Lokahi.  *Id.* ¶ 9.  However, throughout the period

from 2004 through the present, the Department contested what was owed and

continues to this day to pay untimely or in partial the amounts owed for student

services.  *Id.* In fact, as of August 2007, the Department owed more than

$700,000.00, creating yet another crisis that led Dr. Dukes to consider, once again,

closing Loveland/Lokahi.  *Id.*

Although the Court ruled in plaintiffs favor in 2004 at a motion for

preliminary injunction, and the Department subsequently signed a settlement

agreement by which remaining payments were to be calculated, the subsequent

final resolution of the case took four years and was extremely difficult. *Id.* ¶ 11.

There are 11 volumes of correspondence related to this case. *Id.* Consultation with

plaintiffs occurred nearly daily on issues raised by the Department that led to

delays and deficiencies in payment throughout the settlement period. *Id.* Dr.

Dukes and her staff consulted with plaintiffs' attorney and his assistant on nearly a

daily basis and, often, several times a day. *Id.*

Much of the attorney work was devoted to assembling, analyzing and

presenting six years of billing records, invoices, staff time records, client service

logs, progress notes and summaries of these documents to the Court, mediator and

Special Master, which, over time, filled more than 20 banker's boxes. *Id.* ¶ 12.

This work required frequent consultation between plaintiffs and their attorney,

Loveland/Lokahi's own CPA's, staff members and other experts to organize,

analyze and present the information to the mediator and Special Master. *Id.*

Additionally, there was significant disagreement over the scope of the Special

Master's work that required frequent consultation between plaintiffs and their

attorney and between the attorney the Special Master and the Court. *Id.*

The Special Master preliminarily concluded that Loveland/Lokahi had

been overpaid and owed the Department $841,171.68. *Id.* ¶ 13. Plaintiffs'

attorney's document analysis and memorandum in response resulted in a revised

recommendation by the Special Master that Loveland/Lokahi had been over paid

and owed the Department $140,689.28.  *Id.* Subsequently, however, the Court adopted plaintiff'' position, rejected the recommendation of the Special Master's report and ruled that the Department owed Loveland/Lokahi $136,707.84. *Id.* Thus, this lawsuit resulted in total payment of $1,136,707.84 to Loveland/Lokahi, which amount the Department had disputed.  *Id.*

Dr. Dukes personally experienced extreme economic, personal and professional hardship resulting from the Department's failure to pay Loveland/Lokahi timely and in full.  *Id.* ¶ 16.  Defendant's conduct resulted in staff turnover and shortages at Loveland/Lokahi.  *Id.*  Dr. Dukes also had to use personal funds to keep Loveland/Lokahi in operation.  *Id.* Because of the Department's repeated demands for additional documents as predicates to payment, Dr. Dukes and he staff consulted the attorneys on almost a daily basis for advice and consultation, which impacted my and their ability to provide services.

Plaintiffs, by and through their attorneys, Carl M. Varady and Cynthia S. Nakamura, hereby move this Court make an award in the amount in the amount of:

1.     $158,805.50 in fees, $6,615.84 in GET and costs in the amount of $3,408.23, for a total of $168,829.57, to Carl M. Varady, as authorized by 20 U.S.C. § 1415 and 42 U.S.C. § 1988; and

2.    $13,600.00 in fees, $576.39 in GET and costs in the amount of

$111.93, for a total of $14,288.32, to Cynthia S. Nakamura, as

as authorized by 20 U.S.C. § 1415 and 42 U.S.C. § 1988.

## II. ARGUMENT.

A.    Plaintiffs are Entitled to Fees.

The legislative history of the civil rights attorneys' fees statute

establishes that it was enacted to induce competent counsel to undertake

meritorious civil rights litigation by assuring plaintiffs that, if they were successful,

their attorneys would be paid in the same manner as with other fee-paying clients,

even when the results were entirely non-pecuniary. *See Hensley v. Eckerhart*, 461

U.S. 424 (1983); S.Rep. 94-1011, 94th Cong. 2d.Sess. *reprinted in* 1976 U.S.

CONG. & ADMIN. NEWS 5908.

> 20 U.S.C. § 1415 (e)(4)(B) states:
> In any action or proceeding brought under this subsection, the
> court in its discretion may award reasonable attorneys fees as
> part of the costs to the parents or guardian of a child or youth
> with a disability who is a prevailing party.

The Ninth Circuit has determined that this section justifies an award

of attorneys' fees to parents who prevail at an administrative hearing or reached a

favorable settlement prior to a scheduled administrative hearing. *Barlow-Gresham*

*Union High Sch. Dist. v. Mitchell*, 940 F.2d 1280 (9th Cir. 1991); *McSomebodies*

*(No. 1) v. Burlingame Elementary Sch. Dist.*, 897 F.2d 974 (9th Cir. 1989); *see*

*Masotti v. Tustin Unified Sch.Dist.*, 806 F.Supp. 221 (C.D. Cal 1992).

      The Ninth Circuit has recognized that in IDEA cases, for purposes of

awarding attorneys fees, a prevailing party is one that "succeed[s] on any

significant issue in litigation which achieves some of the benefit the parties sought

in bringing the suit." *Parents of Student W v. Puyallup Sch. Dist. No. 3*, 31 F.3d

1489, 1498 (9th Cir. 1994)(*quoting Hensley v. Eckerhart*, 461 U.S. 424, 433

(1983) (citations omitted).  By obtaining a ruling that their child was eligible for

special education and related services, after remand and direction of this Court to

determine whether or not such eligibility existed, Plaintiffs clearly are prevailing

parties having changed the relationship between themselves and a government that

had shirked its responsibility to their child for three years.  *See,  Barrios v.*

*California Interscholastic Federation,* 277 F.3d 1128 (9th Cir. 2002)*. As the Court*

explained in *Otsby v. Oxnard Union High,* 209 F. Supp. 2d 1035 (C.D. Cal. 2002)*:*

> The Ninth Circuit held that Barrios was the "prevailing
> party" because he entered into a legally enforceable
> settlement agreement against the CIF.  *Id.* at 1134. The
> court explained that "'a plaintiff prevails when actual
> relief on the merits of his claim materially alters the legal
> relationship between the parties by modifying the
> defendant's behavior in a way that directly benefits the
> plaintiff.'" *Id.* (*quoting Fischer v. SJB-P.D. Inc.,* 214
> F.3d 1115, 1118 (9th Cir. 2000)) (internal quotation
> marks omitted). Under Ninth Circuit precedent, "'a
> material alteration of the legal relationship occurs [when]
> the plaintiff becomes entitled to enforce a judgment,

consent decree, or settlement against the defendant.' In these situations, the legal relationship is altered because the plaintiff can force the defendant to do something he otherwise would not have to do." *Id.* (*quoting Fischer*, 214 F.3d at 1118 (*quoting Farrar v. Hobby*, 506 U.S. 103, 111-12, 113, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992))) (emphasis added).

*Id.* at 1040.

Clearly, after six years of seeking relief, plaintiffs in the present case have altered their legal relationship with the Department, by having obtained what Department denied them–payment of the $1,136,707.84. As prevailing parties Plaintiffs are entitled to their fees as a matter of law.

      B.     <u>The Fees are to be Determined by the Lodestar.</u>

A determination of reasonable attorneys' fees generally begins with the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Armstrong v. Davis,* 318 F.3d 965 (9th Cir. 2002).

The Supreme Court instructed in *Hensley* that the most useful starting point to determining a reasonable fee is "the number of hours reasonably expended multiplied by a reasonable hourly rate." 461 U.S. at 433.

Once calculated, the lodestar is presumed to be reasonable. *Pennsylvania v. Delaware Valley Citizen's Council*, 483 U.S. 711, 728 (1987); *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1990) *cert. denied* 493 U.S. 1035. The lodestar may be adjusted, if necessary, to determine a

reasonable fee, but any adjustment may not be based on factors already subsumed in the lodestar determination. *See Miller v. Los Angeles County Board of Education*, 827 F.2d 617, 621 n.4 (9th Cir. 1987).    The overriding concern of the fee statutes is that parties are entitled to be compensated in the "same manner that an attorney traditionally is compensated by a fee-paying client for all time reasonably expended on a matter." *Blanchard v. Bergeron*, 489 U.S. 91 (1988); *Cabrales v. County of Los Angeles*, 935 F.2d. 1050 (9th Cir. 1991).

Plaintiffs' attorneys took this case on a modified contingency, with the majority of the fees contingent on an award under the fee statute for payment, receiving statutory attorneys' fees and costs only if successful.  Plaintiffs attorneys requires payment of those fees if they are to continue representing special education clients.  This is precisely why the fee statute exists.

1.    The fees sought are reasonable.

A reasonable hourly rate is "calculated according to the prevailing market rates in the relevant community". *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  In determining a reasonable hourly rate, the district court must consider "the experience, skill, and reputation of the attorney requesting fees." *D'Emanuele v. Montgomery Ward & Co. Inc.,* 904 F.2d 1379, 1384 (9th Cir. 1990), *quoting Chalmers v. City of Los Angeles*, 796 F.2d 1206, 1210 (1985), *amended*, 808 F.2d 1373 (9th Cir. 1987)).  The district court should be "guided by the rate prevailing in

the community for similar work performed by attorneys of comparable skill, expertise, and reputation." *Chalmers*, 796 F.2d at 1210-1211 (citing *Blum*, 465 U.S. at 895 n.11).

If the requested rates are inline with those prevailing in the community for similar services of lawyers of comparable skill and reputation, then the rate is deemed reasonable. The "general rule" in determining the relevant hourly rates pursuant to any civil rights fee shifting statute is that "rates of attorneys practicing in the forum district…are used." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). It is the fees in effect at the time of fee claim that control. The Ninth Circuit recently reiterated the importance of the local market in determining current relevant rates:

> A court awarding attorney fees must look to the prevailing market rates in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895, 79 L. Ed. 2d 891, 104 S. Ct. 1541 (1984). We have held that the court has discretion to apply the rates in effect at the time the work was performed, *see Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997); *Schwartz v. Secretary of HHS*, 73 F.3d 895, 908-09 (9th Cir. 1995). The court may also award rates at an attorney's current rate where appropriate to compensate for the lengthy delay in receiving payment . . . We agree, therefore, that an appropriate adjustment for delay in payment--whether by the application of current rather than historic hourly rates or otherwise--is within the contemplation of the statute. *Missouri v. Jenkins* by Agyei, 491 U.S. 274, 284, 105 L. Ed. 2d 229, 109 S. Ct. 2463 (1989) (internal citations omitted).

*Bell v. Clackamas County*, 341 F.3d 858, 868-869 (9th Cir. 2003)(reversing the district court's award when it used rates that were effective at a time two years prior to the fee litigation).

Carl M. Varady has sought and has been awarded an hourly rate of $275.00 per hour in IDEA and other civil rights cases. Cynthia S. Nakamura has sought and been awarded $250.00 in IDEA and other cases. The statute, 20 U.S.C. § 1415, provides for an award of reasonable attorneys' fees to prevailing parties. The attorneys' hourly rates of $275.00 and $250.00 are reasonable, given awards in similar cases, as the attached declarations of Stanley E. Levin, Eric A. Seitz and Irene E. Vasey attest.

Plaintiffs attorneys' legal assistants are: (1) Danielle Serres, a graduate of University of California at Berkeley, now is attending the William S. Richardson Law School; and (2) Candace Chun, a graduate of Vassar College, who now is attending Albany Law School. Each of them has worked almost exclusively on special education matters. Declaration of Carl M. Varady ¶ 7. Each is highly skilled in analyzing and preparing documents for hearing and interviewing and preparing witnesses. *Id.* All of their time in this case was reviewing, analyzing and organizing documents for presentation at hearing, which documents were voluminous. *Id.* Their work facilitated the briefing, which included an extensive fact chronology detailing the child's educational history and

disabilities from birth to present.  *Id.*  Their document analysis and factual history

were key to resolving this case.  *Id.*  The rate of $80 per hour for their work is not

unreasonable, given prior reimbursement for Ms. Serres's and Ms. Chun's time at

that rate in IDEA matters.

        2.    <u>The hours expended were reasonable.</u>

        A party who is seeking an award of attorneys' fees has the burden of

proving that those fees are associated with the relief requested and are necessary to

achieve the results obtained.  *Hensley,* 461 U.S. at 433.

        There is no touchstone to prove the hours expended were reasonable,

and it must be remember that in complex federal court litigation:

> [A] plaintiff who is unsuccessful at a stage of a litigation that was a
> necessary step to her ultimate victory is entitled to attorney's fees even
> for the unsuccessful stage." In so holding, this court observed that
> "lawsuits usually involve many reasonably disputed issues and a
> lawyer who takes on only those battles he is certain of winning is
> probably not serving his client vigorously enough; losing is a part of
> winning." Id. In view of that reality, the court acknowledged that, as a
> general rule, "plaintiffs are to be compensated for attorney's fees
> incurred for services that contribute to the ultimate victory in the
> lawsuit."

*Gillbrook v. City of Westminster*, 177 F.3d 839, 879 (9th Cir. 1999), *quoting,*

*Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991).

        It is also important for this court to acknowledge that:

> "[I]t is not necessary to know…the exact number of minutes spent nor
> the precise activity to which each hour was devoted [so long as the
> time records provide] fairly definitive information as to the hours

devoted to various general activities, e.g., pretrial discovery,
settlement negotiations and the hours spent by various classes of
attorneys, e.g., senior partners, junior partners, [and] associates."

*FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir. 1990).  *Accord: Boston &*

*Marine Corp. v. Moore*, 776 F.2d 2 (1st Cir. 1985).

Applying these principles it is clear that the hours expended were

reasonable and necessary to the result in this case and that these fees sought are

reasonable, as is demonstrated by the following charts which break down the

attorney and paralegal time in conformity with LR 54.3:

| Description of Work Performed by Carl M. Varady[1] | Hours Expended |
|---|---|
| Case Development, Investigation and Administration (Ex 1.1) | 82.1 |
| Discovery & Doc. Review (Ex 1.2) | 118.45 |
| Depositions (Ex.1.3) | 46.3 |
| Settlement (Ex. 1.4) | 183.05 |
| Pleadings, Drafting Res. (Ex. 1.5) | 132.25 |
| Hearings (Ex. 1.6) | 33 |
| Post-hearing (Ex. 1.7) | 6.2 |
| Total Attorney Time (Ex. 1.8) | 601.35 |
| Total Attorney Un-Billed Attorney Time (Ex. 1.9) | 29.45 |

---

1      These and the paralegal totals include work that was recorded
but written down as non-billable time.  Such time shows as "$0.00," on the
attached statements under the categories "Rate" and "Amount."  The un-billed
totals are shown in Exhibit 1.9 to Declaration of Carl M. Varady

| Total Billed Attorney Time | 571.9 |
|---|---|

| Description of Work Performed by Cynthia S. Nakamura | Hours Expended |
|---|---|
| Case Development, Investigation and Administration | 7.3 |
| Discovery and Document Review | 30.25 |
| Settlement | 2.55 |
| Hearings | 7.35 |
| Motions | 3 |
| Depositions | 3.95 |
| Total | 54.4 |

| Description of Work Performed by Paralegals | Hours Expended |
|---|---|
| Settlement (Ex. 1.4) | 9.6 |
| Discovery & Doc. Review (Ex. 1.2) | 2.4 |
| Total Paralegal Time (Ex. 1.8 | 12 |
| Total Un-Billed Paralegal Time (Ex. 1.9) | 3.4 |
| Total Billed Paralegal Time | 8.6 |

The fees in these categories are expressly described in the fee statement set forth in

Exhibit 1.1-1.9 to Declaration of Carl M. Varady ("DS" denotes Danielle Seress

and "CC" denotes Candace Chun), and the Declaration of Cynthia S. Nakamura Exhibit 1.1-1.8.

The billing statement submitted in support of Plaintiffs' fee motion is sufficiently detailed to meet the *Hensley* standard, which is the standard applicable in this and all United States District Courts. *Fischer v. SJB-P.D. Inc.,* 214 F.3d 1115, 1121 (9th Cir. 2000) (stating that while Plaintiff's counsel bears the burden of submitting evidence supporting the hours worked, Plaintiff's counsel can meet this burden "by simply listing his hours and 'identifying the general subject matter of his time expenditures'"). Plaintiffs' attorneys have identified the hours expended, by the tenth of an hour, for each task performed. Each entry in which more than one activity occurred is billed to the tenth of an hour and expressly describes that activity. On entries with only one activity, only one is described.

    a.    <u>The novelty or difficulty of the questions presented</u>.

In the present action, although the Defendant agreed to or was ordered to provide services for children at Loveland/Lokahi and never disputed that payment was owed. However, the Defendant simply refused to pay until after two years of settlement negotiations, involving the Attorney General himself, a mediation that was wholly fruitless and, finally, the Court's entry of a preliminary injunction. That was only the beginning, however, as it took four more years of work, involving a lengthy dispute with the Department and the Special Master over

the scope of the work, let alone the method of analysis and conclusions

reached–conclusions that were rejected by the Court insofar as they mistakenly

sought to limit Loveland/Lokahi payments because of missing progress notes that

were ultimately provided but which the Special Master nevertheless, thought

should result in a penalty to Loveland/Lokahi.  Even after the Court ruled, the

Department filed a request, supported by 2" of exhibits, asking the Special Master

to reconsider, even though the settlement agreement provided that the Court's

ruling on the recommendations was final.  Thus, after 6 years, the Department still

was trying to evade the payments mandated by IDEA, making this matter

enormously more complex than it should have been.

      b.    <u>This case required a high level of skill</u>.

The procedural complexities of this case are self-evident.  It took six

years of negotiations, mediation, litigation and contention regarding the Special

Master's work before Plaintiff obtained final relief.

      c.    <u>The work required a significant commitment of time precluding other work</u>.

By accepting this case, attorney for the Plaintiffs' attorneys could not

accept other clients because of the work required on this case.  As the declaration

makes clear, other work was declined and more than 600 hours of time were

expended preparing, presenting and concluding this case.

d.     <u>The fee is within what is customarily charged</u>.

Very few attorneys in Honolulu represent clients in IDEA matters of this complexity, and fewer still will take cases that contain the risk of an appeal to this Court.  The fee requested is within the range of what customarily is charged by attorneys willing to take IDEA cases through appeals to federal court.

e.     <u>The fee was primarily contingent</u>.

The fees requested are based on an hourly fixed rate, but they were primarily contingent—unless Plaintiffs prevailed at hearing, Plaintiffs' counsel would not get paid in full and Loveland/Lokahi would not be reimbursed for the fees paid.  Declaration of Carl M. Varady ¶ 3.

f.     <u>The time limitations imposed were significant</u>.

Any case that consumes more than 600 hours of time and includes 4 years of post-hearing proceedings imposes significant time burdens on the office of a solo practitioner, such as Plaintiffs' counsel.  There is no question that by consuming so much work through its defense in this case, Defendant exacted a heavy cost on the Plaintiffs' counsel's time.  Declaration of Carl M. Varady ¶ 12; Declaration of Cynthia S. Nakamura ¶¶ 10 & 15.

g.     <u>The award</u>.

Plaintiffs were able to achieve their objectives in this case–an Order mandating more than more than two years of reimbursement at rates the Defendant

refused to pay. The result obtained provided all the relief the school parents requested, as the Court ordered Department to make reimbursement in full for the more than two school years in question (2002 to 2005) and additionally clarified that payment must continue to be made whether or not Loveland/Lokahi signed the "gag clause" contract. This decision, therefore, establishes, contrary to the State's position, that stay-put cannot be changed merely because Loveland/Lokahi is not in contract with the Defendant or has raised its rates to meet new insurance, rent and employment costs.

> h.     Experience and reputation of counsel.

The attached Declarations of Carl M. Varady, Cynthia S. Nakamura, Stanley E. Levin, Eric A. Seitz and Irene E. Vasey set forth Plaintiffs' attorneys' credentials. Plaintiffs' counsel specialize and have significant experience in the field of civil rights cases and IDEA.

> i.     The case was undesirable.

The complex nature of the child's history in this case made it undesirable and, in fact, delayed the Plaintiffs in obtaining relief, due to the time necessary to complete settlement negotiations, mediation, preliminary injunctive relief and four years of demanding work with the Special Master.

> j.     The relationship with the clients.

The Plaintiffs' concerns regarding the economic survival of

Loveland/Lokahi and the continuous tactics employed by the Department to avoid

prompt and full payment required nearly daily communication with Plaintiffs and

their attorneys.  Declaration of Carl M. Varady ¶ 9; Declaration of Patricia Dukes,

Ph.D. ¶ 16.

            k.      <u>The award sought is consistent with those in similar cases.</u>

        The supporting declarations confirm that the award sought is not

inconsistent with awards made in similar cases.

            l.      <u>The costs sought are reasonable and necessary.</u>

        Costs authorized by fee-shifting statutes comprise those out-of-pocket

costs that are ordinarily billed to a client and are included as part of an award of

attorney's fees.  *See Harris v. Marhoefer*, 24 F.2d 16, 19-20 (9th Cir. 1994);

*International Woodworkers of America AFL-CIO v. Donovan*, 792 F.2d 762, 767 (9th

Cir. 1986) (finding that costs ordinarily billed to a client are routinely awarded under

all other federal fee-shifting statutes).  Costs are routinely awarded under IDEA.  *E.g.,*

*Seattle School Dist. No. 1 v. B.S.,* 82 F.3d 1493 (9th Cir. 1986)(citing statute and

holding that award of fees and costs to be awarded pursuant to statutory language).

           The costs in the present case are reasonable and were incurred for in-

house copying of pleadings and filing fees for the complaint.  Declaration of Carl M.

Varady  ¶ 14.  The costs sought are directly related to the presentation of this case.

The costs are:

-19-

| **Varady Costs** | |
|---|---|
| Filing and service fees | $464.00 |
| Deposition and hearing transcripts | $2,184.23 |
| Photocopying | $760.00 |
| Total | $3,408.23 |

| **Nakamura Costs** | |
|---|---|
| Photocopying | $111.93 |

The costs are properly itemized in the Exhibits to the Declarations of counsel.

The *Hensley* principles apply: the nature and type of costs are reasonably determined.

### III.  CONCLUSION

Plaintiffs respectfully requests instant motion be granted and that they be awarded their fees and costs consistent with this motion.

Dated:  Honolulu, Hawai'i, May 20, 2008.

/S/ Carl M. Varady
CARL M. VARADY
Attorney for Plaintiffs