IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| LOVELAND ACADEMY, L.L.C., PATRICIA DUKES, PH.D., and PARENTS AT LOVELAND SCHOOL<br><br>    Plaintiff,<br><br>vs.<br><br>PATRICIA HAMAMOTO, Superintendent of the Hawai'i Department of Education, HERBERT WATANABE, Chairperson, Hawai'i Board of Education,<br><br>    Defendants. | CIVIL NO.  CV02-00693 HG/LEK<br><br>DECLARATION OF CARL M. VARADY; EXHIBIT 1.1-1.10 |

## DECLARATION OF CARL M. VARADY

Pursuant to 28 U.S.C. § 1746, Carl M. Varady declares:

1. I am the attorney of record for plaintiffs in this matter and make this declaration from my own personal knowledge.

2. I was employed by the American Civil Liberties Union of Hawai'i ("ACLU") as its Legal Director from 1991 through 1994. Since 1995, I have been in private practice. In my work as an ACLU attorney, and in my private

practice, I have been lead attorney in numerous civil rights cases involving constitutional and statutory claims in this Court, the Ninth Circuit, United States Supreme Court (briefs only), Hawai'i trial and appellate courts. The substantive issues asserted in these cases included rights protected under the First, Fifth, Sixth Seventh, Eighth, Fourteenth Amendments to the United States constitution, rights protected the Hawai'i state constitution and statutes and the right to a free appropriate public education under federal and state law.

        3.     A significant portion of my litigation involves cases brought on behalf of disabled students and their families under the Individuals with Disabilities Education Act ("IDEA"). I took this case on a modified contingency basis, with the client paying a portion of my fees and the remainder contingent. My hourly rate was $275.00. I have raised that rate to $295.00, but did not apply the new rate to any of the time billed I the present. This rate and the award sought are consistent with awards made in other cases under IDEA within the Honolulu legal community.

        4.     In addition to my current IDEA work, I also served as co-counsel in Felix, et al. v. Lingle, Civil No. 93-00367 DAE, from pre-filing in 1992 through the issuance of the consent decree, resulting in state-wide class relief for children entitled to special education and related services under IDEA and Section 504 of the Rehabilitation Act.

5. Other noteworthy cases in which I am counsel of record or have appeared include:

- EEOC and Daniels v. Lockheed Martin, CV 05-0479 DAE/LEK (D. Haw. 2005), which resulted in the largest single settlement in a race discrimination case under Title VII of the Civil Rights Act of 1964, a settlement that included both injunctive relief and an award to Mr. Daniels of $2.5 million.

- EEOC and Lovell v. United Airlines, Inc., C 06-01407 TSZ (D. W. Wa. 2007), in which a class of more than 300 disabled United Airlines employees are challenging United's refusal to accommodate them by providing them with reduced work schedules.

- Kalima v. State, NO. 24784 (June 30, 2006, Haw. Sup. Ct. ), in which the Court upheld the right of the 2,721 class members to sue the state for monetary damages for breaches of the trust related to the Department of Hawaiian Home Lands, occurring between 1959 and 1988.

- Spear v. Cayetano, Civil No. 84-1104 SPK, in which I and my co-counsel represented the class of prisoners confined at the Oʻahu Community Correctional Center and Women's

Community Correctional Center, seeking to improve their conditions of confinement;

- Steven A. et al., v. LeMahieu, Civil No. CV 01-00680 SOM-LEK, and Alberta S. et al. v. LeMaheiu, Civil No. CV 01-00366 HG/KSC, in which I and my co-counsel represent parents and their children seeking damages under Section 504 of the Rehabilitation Act for the State's deliberate indifference to the child's need for special education and related services;

- Runyon v. Fasi, 762 F. Supp. 280 (D. Haw. 1991), representing plaintiff successfully challenging the City and County of Honolulu's prohibition on political campaign signs;

- SCI v. Hoshijo, 101 Haw. 438 (2003), in which I was retained to represent the Hawai'i Civil Rights Commission in an appeal that sought to eliminate the statutory requirement that employers participate in proceedings before the Hawai'i Civil Rights Commission and prohibits them from opting-out of the administrative process prior to proceeding to state court;

- Estate of John Doe v. Paul Revere Insurance Co., Civil No. 93-0269-01, in which I was lead trial counsel in an insurance bad faith action that produced a $750,000 verdict in favor of the

estate of a dentist whose disability benefits were terminated in violation of contract;

- Kim v. Penarosa, Civil No. 95-00777 HG/FIY, Deguzman v. Penarosa, Civil No. 96-00680 HG/BMK, and Tupuola v. Penarosa, Civil No. 97-00647 HG/FIY, which challenged the improper use of mechanical restraints and improper use of force on prisoners housed at the Special Holding Unit at Halawa High Security Facility and successfully recovered damages for Eighth Amendment violations;

- State v. Kearns, 75 Haw. 558, 867 P.2d 903 (1994), in which the Hawaiʻi Supreme Court ruled that non-custodial police interrogation at the airport–i.e., "walk and talk"–was seizure without consent or probable cause and, therefore, unlawful under the Hawaiʻi constitution; and

- Baehr v. Lewin, 74 Haw. 530, 852 P.2d 44 (1993), in which I represented the amicus ACLU of Hawaiʻi, in the case challenging Hawaii's prohibition of same-gender marriage.

6. In the course of this case I and my paralegal's incurred fees in the amount in the amount of $158,805.50 in fees, $6,615.84 in GET and costs in

the amount of $3,408.23, for a total of $168,829.57,[1] to Carl M. Varady, as authorized by 20 U.S.C. § 1415 and 42 U.S.C. § 1988.

    7.    My legal assistants were Danielle Seress and Candace Chun. Their time is included the fees for the present case. Ms. Seress is a graduate of University of California at Berkeley, and now is attending the William S. Richardson Law School at the University of Hawai'i. Ms. Chun is a graduate of Vassar College, and now is attending Albany Law School. While employed by me, Ms. Seress and Ms. Chun worked almost exclusively on special education matters. They are highly skilled in analyzing and preparing documents for hearing and managing correspondence and client communications. Their time on this case, which was spent reviewing, analyzing and organizing the voluminous documentation, and regular contacts with the client and client's staff. Their time previously has been reimbursed in IDEA cases at the rate of $80.00 per hour.

    8.    Attached hereto as Exhibit 1.1-1.10 is a statement of the attorneys' fees and costs in this matter, including a break down by category as required by LR 54.3(b). I used ordinary billing judgment in preparing this statement and did not include routine, but minor, expenditures of time responding to nearly daily client calls and e-mails, for example. I did not charge more than

---

    1    The slight difference of $1,397.68 between this number on Ex. 1.10 and the $170,227.25 on the billing statement Ex. 1.8, is due to costs included in that statement that are not recoverable and therefore, not included. Those are costs of the mediator and two unidentified transcripts entered on May 14, 2004, that are not included in costs sought here.

$275.00 per hour for any work, which has been my billing rate for years, even though as a result of increased costs, my rate now is $295.00.

9. There are 11 volumes of correspondence related to this case and, although the depositions and pleadings primarily focused on the motion for preliminary injunction, that my subsequent work with the plaintiffs and Special Master, required assembly and analysis of six years of billing records, invoices, staff time records, client service logs, progress notes and summaries of these documents, which, over time, filled more than 20 banker's boxes.  This work required frequent consultation with plaintiffs' own CPA's, staff members and other experts to organize analyze and present the information to the Special Master. Additionally, there was significant disagreement over the scope of the Special Master's work that required frequent consultation with the Special Master and the Court.

10. Finally, the Special Master preliminarily concluded that Loveland/Lokahi had been overpaid and owed the Department $841,171.68.  My document analysis and memorandum in response resulted in a revised recommendation by the Special Master that Loveland/Lokahi had been over paid and owed the Department $140,689.28.  Subsequently, however, the Court adopted plaintiffs' position, rejected this recommendation of the Special Master's report and ruled that the Department owed Loveland/Lokahi $136,707.84. Thus,

this lawsuit resulted in total payment of $1,136,707.84 to Loveland/Lokahi, which amount the Department had disputed.

      11.    The amount of time incurred in this case, was due to its complex nature, including numerous settlement conferences a mediation, a motion for preliminary injunction, and settlement, followed by four years of work with the client's CPAs and the Special Master trying to reach agreement regarding the methods and documents that would provide information for his report.  The review and analysis of those documents required a great deal of time, as did the nearly weekly demands by the Department for new, different, supplemental, repeated and additional information.  The work done in this case precluded my firm from accepting other clients.  Indicative of the vigor with which Department opposed this case, was the Department's request of the Special Master to amend his report submitted <u>after</u> the Court's final ruling on the Special Master's report and recommendations, even though the Department had expressly agreed to waive any appeal or request for reconsideration of the Court's ruling in the settlement agreement.  Additionally, the Department threatened to institute IEPs immediately for all children placed at Loveland/Lokahi and also retained Bryan Siegel to assess the Loveland/Lokahi program, even though a complaint has been filed against her for practicing clinical psychology in Hawai'i without a license.  More than anything else, the Department continued to make Loveland/Lokahi's existence

untenable by strangling it financially. As of August 2007, the Department had withheld more than $700,000.00 in payments, not including the final $136,707.84, payment for the 2002-05 period ordered by the Court on March 14, 2008.

    12. This case was particularly demanding. I first began working on this dispute in 2002 and had to face vigorous opposition of the from the Department, challenging the proposition that is was obligated to pay for special education and related services provided to children placed at Loveland/Lokahi by settlement, hearing officer's decision or IEP. In particular, the DOE refused to pay for such special education and services even though it had previously agreed to in settlement agreements or IEP or been directed to do so as a result of a hearing officer's decision. The Department never disputed the assertion that the children who were the subject of this dispute were properly placed at Loveland/Lokahi; the Department simply refused to pay because it disagreed with the rates charged. This case illustrates how undesirable cases related to special education are, due to DOE's resistance even after the Court granted a preliminary injunction and the case was settled to paying timely and in full.

    13. The result obtained provided all the relief the requested, as the Court ordered Department to make reimbursement in full, of the amount finally the Court determined the Department owed. Based on this record, the fees incurred the Plaintiffs' six-year struggle to obtain payment in full reflects both the ardor

with which Defendant opposed the school and parents in this case, as well as the complexity of the proceedings.

      14.    The costs incurred are reasonable and are directly related to the presentation of this case. They represent: outsourced and in house photocopying at the rate of $.10 per page, of pleadings filed with the Court and served, and Court filing fees and indicated in the attached billing statement.

      I declare under penalty of perjury the foregoing is true.

      DATED: Honolulu, Hawai'i, May 20, 2008.

                                            /S/ Carl M. Varady
                                            Carl M. Varady