**ORIGINAL**

MARK J. BENNETT                2672
Attorney General of Hawai`i

AARON H. SCHULANER           6954
HOLLY T. SHIKADA             4017
Deputy Attorneys General
235 S. Beretania Street, Room 304
Honolulu, Hawaii 96813
Telephone: (808) 586-1255
Facsimile: (808) 586-1488
E-Mail: aaron.h.schulaner@hawaii.gov

Attorneys for Defendants



FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 02 2008

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| LOVELAND ACADEMY, L.L.C, PATRICIA DUKES, PH.D., AND PARENTS AT LOVELAND SCHOOL,<br><br>Plaintiffs,<br><br>vs.<br><br>PATRICIA HAMAMOTO, Superintendent of the Hawaii Department of Education, HERBERT WATANABE, Chairperson, Hawaii Board of Education,<br><br>Defendants. | CIVIL NO. 02-00693 HG-LEK<br><br>DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS; DECLARATION OF AARON H. SCHULANER; EXHIBIT 1; CERTIFICATE OF SERVICE |

DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

291879_5.DOC

I.  BACKGROUND

In an attempt to assert facts not established in these proceedings, in order to bolster their exorbinant request for attorney's fees and costs, Plaintiffs' have submitted the Declaration of Patricia Dukes as an attachment to their motion. In reality, the only established facts in this case are the facts that are established by the docket in this case, any orders by the Court, and the actual settlement agreement entered into by the parties, which is the subject of the present fee application.

The settlement provides in relevant part the following:

> A.  Releasor, through her attorney, Carl M. Varady, filed two lawsuits. The first was in the Circuit Court for the First Circuit, State of Hawaii, designated as <u>Loveland Academy, L.L.C, Parents at Loveland School v. State of Hawaii, and Doe Entities 1-10</u>, Civil No. 02-1-2544-10. The second was in the United States District Court for the District of Hawaii, designated as <u>Loveland Academy, L.L.C, Patricia Dukes, Ph.D., and Parents at Loveland School v. Patricia Hamamoto, Superintendent of the Hawaii Department of Education, Herbert Watanabe, Chairperson, Hawaii Board of Education</u>, Civil No. 02-00693 HG-LEK.
>
> On March 10, 2004, Releasor filed a Motion for Preliminary Injunction in U.S. District Court seeking, in part, for Releasee to "immediately reimburse the parents of A.K., J.R., P.G-M, M.S., N.R-R, J.B., C.W-P, G.K-R, T.J., A.E.1 and A.E.2 or their assignee Loveland Academy, L.L.C, for costs associated with their special education and related services provided pursuant to settlement agreements or hearing officer's orders under 20 U.S.C. § 1415(f)." The corresponding names of the students indicated by the initials are found in the Declaration of Patricia Dukes, filed that same day.

On March 22, 2004, the Court in <u>Loveland, et al. v. Hamamoto, et al.</u>, Civil No. 02-00693 HG-LEK, granted Plaintiffs' Motion for Preliminary Injunction and trial on the permanent injunction was set for May 18, 2004. Settlement was placed on the record on May 4, 2004, following settlement conference on that same date.

Releasor has made allegations that may relate to the breach of federal and/or state laws in relation to Defendants, including but not limited to the failure to provide a free and appropriate public education under the Individuals with Disabilities Education Act.

B.  The parties hereto desire to enter into this release and settlement agreement in order to provide for the full and final settlement and discharge of all claims which have been, or might be made, by reason of the claims described in Recitals A above, upon the terms and conditions set forth below:

1.  The parties agree that there are three relevant groups of students. Group 1 is defined as the students who were placed at Loveland Academy either by settlement agreement or hearings officer's order. Group 2 is defined as those students for whom placement is not currently disputed by Releasee, but instead the rate for services is at issue. Group 3 is defined as those students for whom the parties disagree as to whether the students are entitled under the Individuals with Disabilities Education Act to be attending Loveland Academy, and hence whether the State is obligated to reimburse Releasor for special education and related services provided at Loveland Academy.

2.  Loveland Academy will be paid for services for Groups 1 and 2 for the period of July 1, 2002 through June 30, 2005, for special education and related services provided as described in the original contract between Loveland Academy and the Department of Health, which expired on June 30, 2002 (the "DOH Contract"). The rates for special education and related services will be paid at 23% over the rates schedule previously provided for in the DOH Contract ("Agreed Upon Rate").

> 3. The Special Master appointed by the Court in <u>Loveland, et al. v. Hamamoto, et al.</u>, Civil No. 02-00693 HG-LEK, shall complete an accounting of the amount owed to Loveland Academy at the Agreed Upon Rate, and shall submit that accounting as a special master's report and recommendation ("R&R") to District Judge Helen Gillmor for her review and adoption.
>
> 4. The parties agree to waive any appeal of and/or objections to the Special Master's R&R.
>
> \* \* \*
>
> 6. Loveland Academy shall be paid attorney's fees and costs in the amounts determined by Magistrate Judge Leslie E. Kobayashi after the parties submit their motion and supporting and opposing memoranda and supporting documents. The parties agree to waive any appeal of and/or objections to the Magistrate Judge's Findings and Recommendation.
>
> \* \* \*
>
> 9. The parties will dismiss with prejudice the federal lawsuit and state lawsuit, with this settlement agreement being filed as an Exhibit to the stipulation to dismiss.
>
> \* \* \*
>
> ### III. DENIAL OF LIABILITY
>
> Releasee denies liability, negligence, breach of duty, breach of any assignment, misconduct, violation of federal and state statutes and laws, and/or wrongdoing of any kind, character or nature whatsoever, and the consideration paid by the Releasee to Releasor is solely in compromise of disputed claims.

Exhibit 1 at 1-4, and 7

On June 18, 2004, Plaintiffs requested that the Court schedule a date for the filing of a fee application 30 days after the filing of the Special Master's Report.

The Court ordered the parties to meet and confer to see if a stipulation could be arrived at. (Docket No. 77)

On July 27, 2004 a stipulation drafted by Plaintiffs' counsel, and agreed upon by the State, was approved by the Honorable Leslie E. Kobayashi stating the following:

> As directed by the Court, through the minute Order of the Hon. Leslie E. Kobayashi entered July 1, 2004, Plaintiffs through their undersigned attorney, Carl. M. Varady, and Defendants, through their undersigned attorney, Aaron Schulaner, Deputy Attorney General, hereby stipulate pursuant to LR 54.3(a), **the Plaintiff shall file their motion asking the Court to determine the attorneys' fees and costs not less than sixty (60) days and <u>not more than seventy-five (75) days after the date the Special Master submits his report to the Court.</u>**

Stipulation (Docket No. 79) (emphasis added).

As the Court is aware, a significant period of time was spent in trying to get documents and cooperation from Plaintiffs to turn over the documents requested for the Report of the Special Master to be completed. Status conferences were held March 2, 2007, March 16, 2007, April 9, 2007, July 9, 2007, September 14, 2007, and September 20, 2007. (Docket No. 83, 87, 90, 91, 94, and 95).

The Report of the Special Master was submitted to the Court on November 30, 2007. Plaintiffs' Motion for Attorney's Fees and Costs was not filed until May 20, 2008.[1]

II.    DISCUSSION

   A.    PLAINTIFFS ARE NOT ENTITLED TO FEES AND COSTS DUE TO THEIR FAILURE TO COMPLY WITH THE MANDATORY PROVISION OF THE STIPULATION TO FILE ANY FEE APPLICATION NO MORE THAN 75 DAYS AFTER THE REPORT OF THE SPECIAL MASTER WAS SUBMITTED TO THE COURT

As discussed previously, Plaintiffs drafted a stipulation regarding the deadline to file its Motion for Attorneys' Fees and Costs which was approved by the Court. The Report of the Special Master was submitted on November 30, 2007 and the present Motion for Attorneys' Fees and Costs was filed approximately 202 days after that, despite the 75 day deadline in the Order of the Court. Plaintiffs do not even acknowledge the existence of the order in its fee application, despite the fact that Plaintiffs are required to establish the authority of the Court to award fees. Given the mandatory language of the stipulation, Plaintiffs' belated motion should be stricken.

---

[1] The Court may wish to take judicial notice of the CM/ECF Notice of Electronic Filing indicates the following regarding the timing of when the present motion was filed "The following transaction was entered by Varady, Carl on 5/21/2008 at 0:14 AM HST and filed on 5/20/08." As such, it appears that the transaction was not entered until May 21, 2008 but was retroactively considered filed on May 20, 2008 according to CM/ECF.

291879_5.DOC                                    6

B.  HOURLY RATE

Assuming for the sake of argument that the Court does not strike Plaintiffs' motion for failing to meet Plaintiffs' own requested stipulation, Mr. Varady's proposed hourly rate is not reasonable and completely disregards the Court's previous decisions regarding his hourly rate. Specifically, a review of Mr. Varady's bill shows entries going back to February 2002 that Mr. Varady attempt to bill at his current court authorized rate of $285 per hour, as opposed to his court authorized rate at the time the services were provided.

Defendant is aware of Mr. Varady being awarded $225 per hour by this Court back in August 28, 2000. James P., et al. v. LeMahieu, et al.; Civ. No. 99-00861 DAE-LEK (Order Granting Plaitnff's Motion for Attorneys' Fees and Costs, dated August 28, 2000).

Mr. Varady's next rate increase was to $250 per hour in an order dated March 31, 2005. K.L., et al. v. Hamamoto; Civ. No. 03-00334 HG-LEK (Order Adopting, As Modified, The Report of the Special Master on Plaintiffs' Motion for Award of Attorneys' Fees and Costs, dated March 31, 2005).

Finally, Mr. Varady's rate was increased to $275 per hour, effective January 1, 2006, in a decision dated May 8, 2007. D.C., et al. v. DOE; Civ. No. 05-00562 ACK-BMK (Report of the Special Master Regarding Plaintiffs' Motion for Award of Attorneys' Fees and Costs, dated May 8, 2007). The rate of $275 per hour has

been reaffirmed as recently as May 28, 2008.  D.C., et al. v. DOE; Civ. No. 07-00362 ACK-KSC (Report of Special Master Recommending that Plaintiffs' Motion for Award of Attorneys' Fees and Costs be Granted in Part and Denied in Part, dated May 28, 2008).

In regards to Ms. Nakamura, the State is not aware of her rate being established by any court.  Ms. Nakamura's declaration does not add much to the analysis of what the prevailing market rate would be for an attorney with a background in government work and some private practice.

Specifically, it appears that Ms. Nakamura was initially a county prosecutor for six years.  Given that Ms. Nakamura is seeking an hourly rate as a civil litigator, these years of experience do not add to the analysis as much as if she had been a civil litigator.  In addition, it is not Defendant's understanding that Ms. Nakamura practices criminal defense work, for which there may be a prevailing market rate for an attorney with a similar background.

Ms. Nakamura subsequently worked for the Regulated Industries Complaints Office, Department of Commerce and Consumer Affairs, State of Hawaii (RICO) for ten years.  She makes the general statement that she "handled numerous administrative matters before the Boards and Commissions and numerous civil matters before the various state courts."

Declaration of Ms. Nakamura at ¶ 4. However, it appears that she was RICO's supervising attorney for eight of those years. As such, it is not clear if in her role as the supervising attorney she had the same type of direct handling of these matters; as opposed to her first two years as a typical government attorney for that office.

In addition, Ms. Nakamura does not clarify what she means by "numerous administrative matters before Boards and Commissions and numerous civil matters before the various state courts." What is meant by "administrative matters," "civil matters," and what does she mean by "numerous?" In other fee applications, it is typical that an attorney will explain in greater detail his or her background and give citations to the numerous cases the individual has been involved in. There is no such reference in Ms. Nakamura's declaration for her time as a prosecutor or at RICO.

Ms. Nakamura then continues on in her Declaration at ¶ 5 and says that she has been in private practice since 2000. In the same paragraph she states that in her career she has been lead counsel in over thirty (30) jury trials and that that she has "appeared before the state courts, Hawaii appellate courts and the United States District Court for the District of

Hawaii on a variety of matters, including matters brought pursuant to the Individuals with Disabilities Education Act."

Yet again, Ms. Nakamura cites to no specific cases. As for the reference to 30 jury trials, as indicated earlier experience as a criminal attorney is not entitled to a one to one correspondence as experience as a civil litigator. Ms. Nakamura does not distinguish as to which of those cases were criminal as opposed to civil. Despite claiming that she has practiced before a variety of courts, Ms. Nakamura does not explain how many times she has appeared before each court, or in any detail as to the type of cases.

The Court may wish to take judicial notice of the CM/ECF system which would appear to list all of the cases that have been handled by Ms. Nakamura in the United States District Court for the District of Hawaii. It indicates that she has only been involved in one case. <u>B., et al. v. Department of Education</u>; Civ. No. 05-00816 ACK-KSC (2007). The case was an IDEA appeal which was ultimately decided in the State's favor by the Honorable Alan C. Kay.

Defendants are well aware that the Court is familiar with the prevailing market rate for services and its previous decisions regarding the award of attorney's fees for Mr. Varady his paralegals. Defendants ask that Plaintiffs not be awarded an hourly rate for the various time periods covered by Mr. Varady's

invoices that is greater than what has been previously awarded by the Court for those corresponding time periods. As for Ms. Nakamura, the Court should not award her the proposed hourly rate she seeks, but instead she should only be awarded what the Court believes the prevailing market rate would be for an attorney of her specific background and experience.

### C. REASONABLENESS OF HOURS WORKED

> Beyond establishing a reasonable hourly rate, a party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are reasonably necessary to achieve the results obtained. *See Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F.Supp. 632, 636 (D.Haw.1993) (citations omitted). A court must guard against awarding fees and costs which are excessive, and must determine which fees and costs were self-imposed and avoidable. *See Tirona*, 821 F.Supp. at 637 (citing *INVST Fin. Group v. Chem-Nuclear Sys.*, 815 F.2d 391, 404 (6th Cir.1987)). A court has "discretion to 'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.*, 801 F.Supp. 1056, 1060 (S.D.N.Y.1992) (citation omitted). Time expended on work deemed "excessive, redundant, or otherwise unnecessary" shall not be compensated. *See Gates*, 987 F.2d at 1399 (quoting *Hensley*, 461 U.S. at 433-34).

Goray v. Unifund CCR Partners, --- F.Supp.2d ---, 2008 WL 2404551 *6 (June 13, 2008) (Civ. N. 06-00214 HG-LEK).

In line with the purpose of facilitating the determination of the reasonableness of the amount of hours spent on a case, Local Rule 54.3 of the Local Rules of the District Court for the District of Hawaii (LR 54.3) sets forth the following requirements when seeking recovery of attorneys' fees and costs: 1)

Itemization of work performed; 2) Description of services rendered; and 3) Description of expenses incurred.

1. ITEMIZATION OF WORK PERFORMED

Defendants submit that Plaintiffs have failed to clearly organize their descriptions of the work performed by litigation phase as required by LR 54.3(d). There are eight categories stated in the rule. Plaintiffs appear to have created their own categories which overlap to a large extent, but not completely with the categories established by LR 54.3(d). As such, one of the purposes of the local rule which was to facilitate the review of fee applications and to assist in determining whether a reasonable amount of time was spent on each phase of litigation was appropriate has been compromised. Local Rule 54.3 has been in effect since December 1, 2002.

2. DESCRIPTION OF SERVICES RENDERED

LR 54.3(d) is clear that Plaintiffs "must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated." Plaintiffs bear "the burden of documenting the appropriate hours expended in litigation and must submit evidence in support of those hours worked." Gates v. Deukmejian, 987 F.2d 1392, 1397 (9th Cir. 1992).

Defendant submits that Plaintiffs' filing falls short of meeting the requirements of LR 54.3. Plaintiffs' billing entries are consistently vague in their

descriptions with the words "prepare," "review," "draft," "update," and "revise" in addition to the use of block billing. As such, it is difficult to objectively ascertain the reasonableness of the hours expended in this case.

Plaintiffs' counsel was previously put on notice of the requirements of LR 54.3 by the Honorable Leslie E. Kobayashi, and told that "any future failure to abide by the requirements of the amended rule shall result in significant, if not wholesale, deductions." Report of Special Master on Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, K.L., et al. v. Hamamoto, Civ. No. 03-00334 HG-LEK (D. Haw. June 9, 2004).

As such, it should be no surprise to Plaintiffs' counsel that the Court upon finding problems with the fee application, is free to make deductions. The Honorable Kevin S.C. Chang, in a recent Report of the Special Master on an attorney fee application by Mr. Varady, noted that the bill suffered from a use of block billing that made "it difficult, if not impossible for the court to determine the reasonableness of the hours expended." D.C., et al. v. DOE; Civ. No. 07-00362 ACK-KSC (Report of Special Master Recommending that Plaintiffs' Motion for Award of Attorneys' Fees and Costs be Granted in Part and Denied in Part, dated May 28, 2008) at 14. This resulted in "an across-the-board reduction." Id. at 14.

A straight forward review of the billings in this case show that the present invoice suffers from block billing, in which various activities within the same

billing entry are lumped together. None of the individual activities are associated with any specific amounts of time.

In a case such as this in which Plaintiffs' counsel is seeking fees stretching back six years ago, Plaintiffs' counsel must do a better job in describing the services rendered and more importantly how those services specifically related to the proceedings that occurred in this case, in order for the reviewer to be able to ascertain if the work was reasonably related to and necessary for the prosecution of the case.

As stated previously, this Court has "discretion to 'trim fat.'" In the present case, it is hard to imagine that issues resolved by a settlement agreement could in any way, shape, or form justify the amount of attorneys' fees and costs sought by Plaintiffs. The Court is very familiar with this case as it successfully shepherded it to settlement and through the accounting with the Special Master. This puts the Court in a very unique position where it can draw upon its extensive experience with this case and appropriately assess whether Plaintiffs' fee application is reasonable, and if not, what "fat needs to be trimmed."

    3.    DESCRIPTION OR EXPENSES INCURRED

With respect to the description of expenses incurred, LR 54.3(d) specifically states "[i]n addition to identifying each requested non-taxable expense, the moving party shall set forth the applicable authority entitling the moving party to such

expense and should attach copies of invoices and receipts, if possible." Plaintiffs have not attached any invoices or receipts for any of the expenses being claimed.

III.  CONCLUSION

For the foregoing reasons, Defendants submit that the Plaintiffs' Motion for Award of Attorney's Fees and Costs should be stricken as a result of Plaintiffs' failure to comply or even acknowledge Plaintiffs' own stipulation approved and ordered by the Court, or in the alternative the Court should significantly reduce any attorney's fees and costs in this case, through its ability to trim the fat.

DATED:  Honolulu, Hawaii, July 2, 2008.

_____
AARON H. SCHULANER
HOLLY T. SHIKADA
Deputy Attorneys General

Attorneys for Defendants