Law Offices of Carl M. Varady

Carl M. Varady
American Savings Bank Tower
1001 Bishop Street, Suite 2870
Honolulu, Hawaii  96813
Telephone:  (808) 523-8447
Facsimile: (808) 523-8448
e-mail: carl@varadylaw.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | |
|---|---|
| LOVELAND ACADEMY, L.L.C., PATRICIA DUKES, PH.D., and PARENTS AT LOVELAND SCHOOL<br><br>Plaintiff,<br><br>vs.<br><br>PATRICIA HAMAMOTO, Superintendent of the Hawai'i Department of Education, HERBERT WATANABE, Chairperson, Hawai'i Board of Education,<br><br>Defendants. | CV02-00693 HG/LEK<br><br>PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS; DECLARATION OF CARL M. VARADY, EXHIBITS 1-4; CERTIFICATE OF SERVICE |

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

# I. FACTS.

Plaintiffs instituted this action arising under the Individuals with Disabilities Education Act ("IDEA") in which the Department of Education (the "DOE") was ordered to pay $1,136,707.84 for special education and related services provided by Loveland Academy, L.L.C., (hereafter "Loveland/Lokahi") to students who were eligible and for and received such services there. DOE does not dispute that Loveland/Lokahi was a prevailing party, now that the Court has ruled, rejecting the Special Master's recommendations. However, DOE now invokes the settlement agreement as a bar to payment of attorneys' fees and costs incurred by Loveland/Lokahi in this matter, even though it is apparent that: (1) the events which both parties anticipated would occur after the Special Master's Report and Recommendations were submitted to the Court did not occur; and (2) the settlement agreement's terms demonstrate that at the time it was signed, the parties were mistaken as to the facts underlying the settlement agreement.

As the Court is aware, the Special Master preliminarily concluded that Loveland/Lokahi had been overpaid and owed the Department $841,171.68, in his preliminary report. This was based on a premise, ultimately rejected by the Court, that the service logs, attendance sheets and payroll records were not sufficient proof that services were in fact rendered and that missing progress notes, later produced, supported the Special Master's conclusion that massive overpayment had occurred. The disparity between what the parties had contemplated at the time of the

settlement agreement and what the Special Master recommended is even more stunning that might immediately appear, when the specifics of the settlement agreement are considered.

The settlement agreement, which was the product of two years of settlement conferences, mediation with David Fairbanks and, ultimately litigation, contains a payment schedule that calls for payment of a minimum of $1.5 million, with the anticipated balance being paid not less than "60 days after the Order Adopting the Special Master's R&R is filed." *See,* Exhibit 1 to Declaration of Carl M. Varady at 3, ¶ 5. The agreement contained additionally provides "the parties agree to waive appeal and/or objections to the Special Masters' R&R." *Id.* at 3, ¶ 4. Thus, the parties anticipated payment in excess of $1.5 million and waived objections to the Special Master's recommendations, with a payment of $500,000.00 after the recommendations were filed. Based on these expectations, the parties agreed to a schedule, submitted for the Court's approval, that provided for filing a request for attorneys' fees not less than 60 days and not more than 75 days after the Special Master's recommendations had been made. The parties clearly anticipated that: (1) Loveland/Lokahi would be the prevailing party for purposes of any fee determination; (2) as they had waived objections to the Special Master's recommendations, that the recommendations would be received and

promptly[1] adopted by the Court as a formality; and (3) the Court would enter its final judgment[2] immediately after formally adopting the Special Master's recommendations. Contrary to the parties' expectations, these events did not unfold as expected.

After the preliminary report of the Special Master concluded that Loveland/Lokahi had been overpaid and owed the Department $841,171.68, several meetings were convened with full participation by DOE, in which Loveland/Lokahi sought to address the Special Master's concerns and convince him of what the Court ultimately ruled–progress notes were not a prerequisite to compensation. Plaintiffs' memorandum in response resulted in a revised recommendation by the Special Master that Loveland/Lokahi had been over paid and owed the Department $140,689.28. As Defendants note, this revised report was submitted to the Court on November 30, 2007. On that date, therefore, Loveland/Lokahi's status as a "prevailing party" was unsettled.[3]

---

[1] FRCP 53(g)(2) state objections must be made within 20 days after the Master's report is filed. As the parties waived their objections, the 20-day period for objections was inapplicable and the Court's ruling could have been made anytime after the report was filed.

[2] LR 54.3(a) states that the motion for attorneys' fees is to be filed within 14 days of entry of judgment. The stipulation did not address the requirement that judgment enter, nor did it relieve the parties from the judgment rquirement.

[3] In attorney fee litigation, DOE routinely takes the position that anything less that success in every aspect of a particular matter should result of a

One-hundred and five days after the Special Master submitted his report and recommendations, the Court issued its Order adopting plaintiffs' position, rejecting the recommendation of the Special Master's report and ruling that the Department owed Loveland/Lokahi $136,707.84. The Court's Order did not end the matter, however. Defendant did not disclose in its opposition that on March 17, 2008, it filed with the Special Master, and served on the Court, a 313 page request to reconsider and revise the Special Master's entire report and a statement of intent[4] as follows if reconsideration did not occur:

> Please respond by letter, by the close of business on March 20, 2008 (Thursday), as you response will impact whether I will be filing a motion for reconsideration with the Court, as there may be a need to reopen your accounting, to finalize the accounting called for in the settlement agreement.

Although the Court's Order entered on March 14, 2008, final judgment did not enter until May 6, 2008,[5] more than five months after the Special

---

denial of attorneys' fees, irrespective of success in the majority of the substantive areas of the case. Thus, for example, the Department currently is arguing against an award of fees for attorney time expended in and IDEA administrative hearing, which was lost but which was later reversed in a successful appeal. Declaration of Carl M. Varady ¶ 3 and Exhibit 2, thereto.

    4    Only the cover letter is submitted as, for the sake of brevity, rather than the voluminous attachments. Exhibit 3 to Declaration of Carl M. Varady.

    5    Final judgment entered only after Plaintiffs' attorney contacted the Court and requested final judgment enter so that the fee petition could be filed.

-4-

Masters report and recommendations were filed. Plaintiffs filed their fee request within 14 days[6] of that date, as required by LR 54.3.[7]

Thus, contrary to the express terms of the settlement agreement, stipulation, intent and expectation of the parties:

    1.    The Special Master's report and recommendations were not fully favorable to Loveland/Lokahi, raising the possibility that Loveland/Lokahi was not a fully "prevailing party" for some or even all of its fee request;

    2.    The Court did not rule on the Special Master's report and recommendations immediately, as contemplated by the parties,

---

    6    Defendant notes, correctly, that the filing was not technically completed until 14 minutes after midnight on May 21st. The uploading process took an extraordinary amount of time, even though the document had been purposefully broken into small segments and uploading had begun with sufficient time, based on prior experiences. Declaration of Carl M. Varady ¶ 5. Plaintiffs' attorney contacted the CM/ECF representative the next day to inquire about the delay. *Id.* Plaintiffs' attorney was informed that pdf files generated in WordPerfect by use of the "publish to pdf" function created unforeseen problems for the CM/ECF system and significantly delayed uploads. Until that time, Plaintiffs' attorney was unaware of this issue as it was not disclosed in the CM/ECF training. *Id.*

    7    In pointing out the 14-minute delay, Defendant neglected to inform the Court that, when Defendant's attorney requested an extension of time in which to file its opposition to Plaintiffs' fee petition, from June 11, 2008, until and including July 2, 2008, in order to accommodate Defendants' attorneys' child care and summer schedule, Plaintiff's attorney granted the request without objection. *Id.* ¶ 6. Defendant's attorney apparently did not consider it inconsistent with this courtesy, routinely extended to his office from Plaintiffs' attorney, to refrain from making a point of the 14-minute delay.

      and did not rule within the 75-day period originally selected by the parties for submission of the fee petition;

3. Even after the Court ruled on March 14, 2008, 105 days after the Special Master's report was filed, Loveland/Lokahi's status as a fully "prevailing party" was subject to direct and continued dispute by the Department;

4. On March 14, 2008, the Department presented lengthy argument to the Special Master, copied to the Court, informing the Special Master and the Court that it was contesting the Special Master's and, thus, the Court's analysis and conclusions and threatening a motion to contest the issues identified;

5. The Court's ruling was not final as judgment did not enter until May 6, 2008. Until that time, the Department's threat to file a motion for reconsideration and challenge Loveland/Lokahi's status as a prevailing party was not foreclosed.

Plaintiffs assert that their fee request should not be precluded as a result of these unanticipated events, which were outside the contemplation of the parties and the Court at the time of settlement. Nor, should the Court reduce the fees requested on the basis of other issues raised by Defendant, as the facts and law fully support the requested fees.

## II. ARGUMENT.

    A.    <u>The Request for Fees was Timely Under These Circumstances</u>.

It is apparent from the facts recited above that the parties' and Courts' original understanding and intent regarding the manner in which the Special Master's report and recommendations would be reviewed and the time in which the matter of fees could be resolved was interrupted by superseding events. The Special Master's recommendations were at odds with the Settlement Agreement, which anticipated future payment of more the $500,000.00. Until the Court's Order on March 14, 2008, the parties did not know whether Plaintiffs were fully prevailing parties or whether the Court would adopt the Special Master's recommendation that Loveland/Lokahi repay DOE.

Until the Court entered its final judgment on May 6, 2008, Defendant could not determine that the Order was final and that DOE would not be able to follow through on its threat to file a motion to reconsider. And, until final judgment entered Plaintiffs were subject to having any fee petition dismissed as premature, as the stipulation was silent as to whether Plaintiffs were relieved from the final judgment requirement of LR 54.3. Clearly what the parties contemplated at the time of the stipulation was a report and recommendation settling amounts owed Loveland/Lokahi, promptly adopted by the Court, without objection, with an Order and Judgment issuing immediately thereafter. Actual events, however, were

-7-

far from the process and calendar envisioned by the parties at the time of the stipulation. The stipulation simply does not fit the facts and, like any other matter within the Court's discretion, should not bar consideration of the fee petition, timely filed after judgment finally entered. To hold otherwise would be contrary to the intent of the parties and the Court at the time the stipulation was made, as well as LR 54.3, to submit the matter of fees for consideration only after the Court had resolved all substantive issues.[8]

>    B.   Defendant's Substantive Arguments are Baseless.

>    1.   Fees are determined by the lodestar.

Determining reasonable attorneys' fees generally begins with the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Armstrong v. Davis,* 318 F.3d 965 (9th Cir. 2002).

> In awarding attorneys' fees, the Court must look to the prevailing market rates in the relevant community and may award rates at an attorney's current rate where appropriate to compensate for the lengthy delay in receiving payment. An appropriate adjustment for delay in payment--whether by the application of current rather than historic hourly rates or otherwise--is within the

---

[8] To the degree the Court may consider this analysis as requiring modification of the stipulation, rather than treating the stipulation as superseded by the unexpected intervening facts of this case, Plaintiffs respectfully request the Court treat this memorandum as requesting such modification.

contemplation of the statute. *Bell v. Clackamas County*, 341 F.3d 858, 868-869 (9th Cir. 2003)(reversing the district court's award when it used rates that were effective at a time two years prior to the fee litigation). Defendant concedes that Carl M. Varady has sought and has been awarded an hourly rate of $275.00 per hour in IDEA and other civil rights cases. Defendant does not contest that Cynthia S. Nakamura has sought and been awarded $250.00 in IDEA cases. The statute, 20 U.S.C. § 1415, provides for an award of reasonable attorneys' fees to prevailing parties. The supporting declarations of practitioners in IDEA demonstrate that attorneys' hourly rates[9] of $275.00 and $250.00 are reasonable, given awards in similar cases.

       2.    <u>The hours expended were reasonable and sufficiently documented</u>.

As a general rule, plaintiffs are to be compensated for attorney's fees incurred for services that contribute to the ultimate victory in the lawsuit. *Gillbrook v. City of Westminster*, 177 F.3d 839, 879 (9th Cir. 1999), *quoting, Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991).

It is not necessary to establish the exact number of minutes spent nor the precise activity to which each hour was devoted so long as the time records provide fairly definitive information as to the hours devoted to various general

---

      9    Defendant did not contest the reasonableness of the hourly rate of $80.00 sought for legal assistants' time.

activities and the hours spent by various classes of attorneys. *FMC Corp. v. Varonos*, 892 F.2d 1308, 1317 (7th Cir. 1990). *Accord: Boston & Marine Corp. v. Moore*, 776 F.2d 2 (1st Cir. 1985).

As it routinely does, Defendant objects to the time entries wrongly stating that they impermissibly were expressed as either without sufficient detail or under the rubric of "block billing." The Ninth Circuit explains that "'block billing'" is "'the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). Thus, block billing occurs when an attorney merely records the total daily time, rather than the breaking multiple activities into individual billing entries.

Review of the billing entries demonstrates that the time records are sufficiently detailed and itemized to permit the review that block billing does not. Several days included multiple entries of attorney time, including as many as four entries for various types of research, for example. The entries are fully consistent with the concerns and considerations expressed in LR 54.3(d)(2), which strike a balance between disclosure of confidential information and the need for enough information to evaluate the activity's relevance:

> In describing such services, counsel should be sensitive
> to matters giving rise to attorney-client privilege and

attorney work product doctrine, but must nevertheless furnish an adequate non-privileged description of the services in question. If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly. For example, time entries for telephone conferences must include an identification of all participants and the reason for the call; entries for legal research must include an identification of the specific issue researched and, if possible, should identify the pleading or document for which the research was necessary; entries describing the preparation of pleadings and other papers must include an identification of the pleading or other document prepared and the activities associated with such preparation.

The time records in this case fulfill the requirement of sufficient specificity to determine appropriateness without unnecessarily divulging confidential communications or attorney thought processes.[10] The billing entries are not "block billing" and provide the Court with ample information to determine the reasonableness of the fees incurred for each activity. *Cf. Role Models Am., Inc. v. Brownlee*, 359 U.S. App. D.C. 237, 353 F.3d 962, 971 (D.C. Cir. 2004) (reducing requested hours because counsel's practice of block billing lumped together multiple tasks, making it impossible to evaluate their reasonableness). The time entries in the attached statement do not prevent the Court from making

---

10      This is particularly important in cases such as the present case where further litigation is anticipated regarding services provided by Loveland/Lokahi.

such a determination and, thus, are not block billing and are sufficiently detailed to permit full and fair review by the Court.

The information provided is sufficient for the Court to determine that the hours expended were reasonable and necessary to the result in this case and that these fees sought are reasonable.

       3.      <u>The "meat axe" approach is disfavored</u>.

Defendant without a single piece of evidence in support, argues that the Court should "trim the fat" that Defendant perceives exists in the fee statement submitted. Defendant does so without acknowledging that its own wrongful actions are the cause of the fees incurred. In a dispute that lasted six years, in which Defendant continuously opposed payment for the services Loveland/Lokahi provided, and which Defendant ultimately lost on every argument, it nevertheless blames Loveland/Lokahi for the fees incurred in dealing with its obdurate refusal to pay. Simply arguing to the Court to cut for cutting's sake is wrong.

The "meat axe" approach advocated by DOE is controversial, and does not discharge the district court from "its responsibility to set forth a 'concise but clear' explanation of its reasons for choosing a given percentage reduction nor from its duty to independently review the applicant's fee request." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001). Thus, "decisions . . . employing percentages in cases involving large fee requests are subject to

heightened scrutiny" by the Ninth Circuit. *Id.* The Court abuses its discretion if it cuts broad categories of activity by arbitrary percentages on the basis of its unarticulated and unsubstantiated dissatisfaction with lawyers' efforts to economize, rather than by disallowing specific items of unreasonable activity and providing examples of excessive time. *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir. 1992). This is precisely the type of cutting with Defendant advocates and which the Court must avoid.

        4.    <u>The costs sought are reasonable and necessary</u>.

Costs are routinely awarded under IDEA. *E.g., Seattle School Dist. No. 1 v. B.S.,* 82 F.3d 1493 (9th Cir. 1986)(citing statute and holding that award of fees and costs to be awarded pursuant to statutory language).

As stated in the supporting declaration, the costs in the present case were incurred for depositions and records transcripts, in-house copying of pleadings[11] and filing and fees for the complaints.[12] The costs sought are directly related to the presentation of this case. Contrary to Defendant's assertion, LR 54.3 does not require receipts, which, given that the copying was performed in house, would not be available. To address Defendant's objection on this point, however,

---

        11    As noted in the prior supporting declaration, the rate charged was actual cost of $.10 rather than $.15, which the local rule would permit.

        12    Both a state court contract case and federal civil rights case were initiated to resolve this dispute.

Plaintiff submits the attached supporting declaration that includes copies of all invoices documenting transcript, filing and service fees.  Exhibit 4 to Declaration of Carl M. Varady.  The costs are properly itemized in the Exhibit.  The *Hensley* principles apply: the nature and type of costs are reasonably determined.

### III.  CONCLUSION

Plaintiffs respectfully requests instant motion be granted and this Court make an award in the amount in the amount of:

1. $158,805.50 in fees, $6,615.84 in GET and costs in the amount of $3,408.23, for a total of $168,829.57, to Carl M. Varady, as authorized by 20 U.S.C. § 1415 and 42 U.S.C. § 1988; and

2. $13,600.00 in fees, $576.39 in GET and costs in the amount of $111.93, for a total of $14,288.32, to Cynthia S. Nakamura, as as authorized by 20 U.S.C. § 1415 and 42 U.S.C. § 1988.

Dated:  Honolulu, Hawai'i, July 3, 2008.

/S/ Carl M. Varady
CARL M. VARADY
Attorney for Plaintiffs