EXHIBIT 3 TO DECLARATION OF CARL M. VARADY



LINDA LINGLE
GOVERNOR

MARK J. BENNETT
ATTORNEY GENERAL

LISA M. GINOZA
FIRST DEPUTY ATTORNEY GENERAL

**STATE OF HAWAII**
DEPARTMENT OF THE ATTORNEY GENERAL
EDUCATION DIVISION
235 S. BERETANIA STREET, ROOM 304
HONOLULU, HAWAII 96813
(808) 586-1255
FAX NO. (808) 586-1488

March 17, 2008

John Candon, Special Master
Candon Consulting Group, LLC
ASB Tower, Suite 955
1001 Bishop Street
Honolulu, Hawaii 96813
Ph: 533-1270/FAX: 533-1528

Re:   Loveland, et al. v. Hamamoto, et al.; Civ. No. 02-00693 HG-LEK

Dear Mr. Candon:

As you are aware a settlement agreement, dated June 4, 2004, was entered into between the parties, which provided that you as a Special Master would conduct an accounting, and submit a Special Master's Report and Recommendation to the Honorable Helen Gillmor for her review and adoption. In addition, the Department of Education put down a deposit of $1,000,000 (i.e. a payment of $250,000 by May 11, 2004 and $750,000 by June 4, 2004) toward any amount that would ultimately be determined to be owed under your accounting. Exhibit A (Settlement Agreement).

In regards to your accounting, the settlement agreement provided for Loveland to be paid a 23% increase over the rates expressed in the original contract between Loveland Academy and the Department of Health, which expired on June 30, 2002, and that these new rates would apply from July 1, 2002 through June 30, 2005. Exhibit A at pages 2-3.

As you are aware, Loveland Academy on various occasions billed the Department of Education for the general excise tax, which is approximately 4%. In addition, prior to entering into the settlement agreement on June 4, 2004, Loveland Academy submitted bills to the Department of Education for rates in excess of 23% of the DOH rates. For example, at one point in time, Loveland billed the Department of Education $306.80 per day for day treatment, despite the DOH contract rate being $222.00 per day, amounting to approximately a 38% increase. In addition, Loveland Academy billed the Department of Education for late fees related to the Department of Education not paying the full rate expressed in its invoices.

A copy of Defendant's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction, filed March 17, 2004, including Exhibits 1-4, is attached as Exhibit B to this letter. Exhibit 2 to Exhibit B is the DOH contract. A review of Defendant's Memorandum at pages 2-5 indicates the Department of Education position regarding Loveland's billing practices.

In conducting the accounting, it was my understanding in speaking to you and your associate, Clifford Miyashiro, that the 23% rate increase over the DOH contract rates was reflected in your analysis of the amounts billed by Loveland Academy.

Your expert report, submitted on December 4, 2007, to the Honorable Helen Gillmor, indicated that Loveland Academy had billed a total amount of $8,412,011.56, as reflected in Exhibit A to your report. Your report has been attached as Exhibit C to this letter for ease of reference. Apparently, you reduced this amount by $1,226.70 due to a failure on the part of Loveland Academy to provide daily progress reports to support the work having been provided. Exhibit C at page 5. You additionally, found that there were documentation exceptions that resulted from a lack of Daily Progress Reports, for a total of $277,397.12 in total billings. Finally, you found calculation exceptions in regards to time charge errors that amounted to $12,130.12. Your final conclusion was that Loveland Academy total billings of $8,412,011.56 should be reduced to $8,122,484.32. As such, you compared that to the $8,263,173.60 received by Loveland Academy and found that Loveland Academy had been overpaid by $140,689.28.

On March 14, 2008, the Honorable Helen Gillmor issued her Order Adopting in Part, Rejecting in Part, and Modifying in Part, Special Master's November 30, 2007 Report and Recommendation. Exhibit D (Order). The Court found that there

was sufficient evidence of the services provided by Loveland Academy, in regards to the $277,397.12 in services, that you did not find was supported by Daily Progress Reports. As such, the Court added this amount back to your previous reduction of Loveland Academy's billings (i.e. $8,122,484.32) for a total of $8,399,881.44. The Court then compared this to the $8,263,173.60 previously received by Loveland Academy and found that it had been underpaid by $136,707.84, and as such modified your Report and Recommendation.

In reviewing the Court's Order and its reference to your report, as to the amount of billings by Loveland Academy, I contacted Cliff Miyashiro, of your office to confirm whether the amount of billings by Loveland Academy had been adjusted to reflect the 23% rate increase over the DOH contract rates, and the amounts billed for the general excise tax and the late fees. My understanding from Mr. Miyashiro is that the amount of billing by Loveland Academy that the Court had relied upon, had not been adjusted to take into consideration those matters.

Given that the settlement specifically, called for the rates of services to be a 23% rate increase over the DOH contract rates, and the invoices by Loveland Academy include invoices that charged more than 23% over the DOH contract rates, and Loveland Academy's invoices included charges for the general excise tax, which was not authorized under the DOH contract, since it was included in the contract price, does the Special Master's Report actually reflect the accounting called for under the Settlement Agreement?

Please respond by letter, by the close of business on March 20, 2008 (Thursday), as you response will impact whether I will be filing a motion for reconsideration with the Court, as there may be a need to reopen your accounting, to finalize the accounting called for in the settlement agreement.

Sincerely,

Aaron H. Schulaner
Deputy Attorney General

Enclosures

cc: The Honorable Helen Gillmor
    Carl M. Varady, Esq.

137754_2.DOC                              3