IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

LOVELAND ACADEMY, L.L.C.,      )      CIVIL NO. 02-00693 HG-LEK
PATRICIA DUKES, PH.D., and     )
PARENTS AT LOVELAND SCHOOL,    )
                               )
          Plaintiffs,          )
                               )
     vs.                       )
                               )
PATRICIA HAMAMOTO,             )
Superintendent of the Hawaii   )
Department of Education,        )
HERBERT WATANABE,              )
Chairperson, Hawaii Board of   )
Education,                     )
                               )
          Defendants.          )
_____ )

**REPORT OF SPECIAL MASTER ON PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS**

Before the Court, pursuant to a designation by Chief

United States District Judge Helen Gillmor, is the Motion for

Award of Attorneys' Fees and Costs ("Motion"), filed on May 20,

2008 by Plaintiffs Loveland Academy, L.L.C. ("Loveland"),

Patricia Dukes, Ph.D., and Parents at Loveland School

(collectively "Plaintiffs").  Plaintiffs request an award of

$165,402.09[1] in attorneys' fees, including general excise tax,

and $3,489.88[2] in costs to Plaintiffs' counsel Carl Varady, Esq.,

---

[1] The Motion requests $158,805.50 in attorney's fees and
$6,615.84 in general excise tax, [Motion at 2,] but this appears
to be a mathematical error.

[2] The Motion requests $3,408.23 in costs, [id.,] but this
appears to be a mathematical error.

and an award of $14,176.39 in attorneys' fees, including general excise tax, and $111.93 in costs to Plaintiffs' counsel Cynthia Nakamura, Esq.  Defendants Patricia Hamamoto, Superintendent of the Hawaii Department of Education, and Herbert Watanabe, Chairperson, Hawaii Board of Education (collectively "Defendants") filed their memorandum in opposition on July 2, 2008, and Plaintiffs filed their reply on July 3, 2008.  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii ("Local Rules").  After reviewing the parties' submissions and the relevant case law, the Court FINDS and RECOMMENDS that Plaintiffs' Motion be GRANTED IN PART AND DENIED IN PART.  The Court recommends that the district judge award Plaintiffs $149,182.42 in attorney's fees and $2,479.88 in costs, for a total award of $151,662.30.

## BACKGROUND

Loveland is a school that provides special education and mental health services on a day-treatment basis for eligible children under the Individuals with Disabilities Education Act ("IDEA").  Prior to July 1, 2002, Loveland had a contract with the State of Hawaii Department of Health (the "Contract").  The Contract set billing rates for Loveland students placed under the Contract.  After the expiration of the Contract, the State of

Hawaii Department of Education (the "DOE") took over responsibility for providing autism services.

Loveland increased their day-treatment rates on July 1, 2002, and again in January 2003 and July 2003. From the expiration of the Contract through 2004, the DOE refused to pay the current day-treatment rates for any child, even where the child was placed at Loveland pursuant to settlement agreement or hearings officer decision. [Motion, Decl. of Patricia Dukes ("Dukes Decl."), at ¶¶ 5, 7-8.]

Plaintiffs filed the instant action on October 28, 2002. Plaintiffs filed a motion for preliminary injunction on March 12, 2004. After a hearing on March 22, 2004, the district judge granted the motion and ordered Defendants to, *inter alia*, make an immediate $250,000 payment to Loveland. The district judge also authorized the appointment of a special master to assist the parties in evaluating Loveland's current rates. [EP: Plaintiff's Motion for Preliminary Injunction, filed March 22, 2004.] The parties and the district judge agreed upon John Candon, Esq., as the special master ("Special Master").

The parties reached a settlement and this Court conducted a settlement on the record on May 4, 2004. The district judge entered an amended order of dismissal on May 20, 2004, and an amended judgment was issued on the same day. The parties executed a Release and Settlement Agreement on June 4,

3

2004 ("Settlement Agreement").[3]  The Settlement Agreement

provided, in pertinent part:

> 1.    The parties agree that there are three
> relevant groups of students.  Group 1 is defined
> as the students who were placed at Loveland
> Academy either by settlement agreement or hearings
> officer's order.  Group 2 is defined as those
> students for whom placement is not currently
> disputed by [Defendants], but instead the rate for
> services is at issue.  Group 3 is defined as those
> students for whom the parties disagree as to
> whether the students are entitled under the
> Individuals with Disabilities Education Act to be
> attending Loveland Academy, and hence whether the
> State is obligated to reimburse [Plaintiffs] for
> special education and related services provided at
> Loveland Academy.
> 2.    Loveland Academy will be paid for
> services for Groups 1 and 2 for the period of
> July 1, 2002 through June 30, 2005, for special
> education and related services provided as
> described in [the Contract] . . . .  The rates for
> special education and related services will be
> paid at 23% over the rates schedule previously
> provide for in [the Contract] ("Agreed Upon
> Rate").
> 3.    The Special Master . . . shall complete
> an accounting of the amount owed to Loveland
> Academy at the Agreed Upon Rate, and shall submit
> that accounting as a special master's report and
> recommendation ("R&R") to District Judge Helen
> Gillmor for her review and adoption.
> 4.    The parties agree to waive any appeal of
> and/or objections to the Special Master's R&R.

[Settlement Agreement at 2-3.]  The Settlement Agreement also

included a payment schedule of more than $1.5 million and

provided that Loveland would be paid attorneys' fees and costs.

---

[3] Defendants attached the Settlement Agreement to their
memorandum in opposition to the Motion as Exhibit 1 to the
Declaration of Aaron H. Schulaner.

[Id. at 3.]  The Special Master's determination of the amount owed under the Settlement Agreement, however, was a lengthy process involving numerous status conferences before this Court regarding the production of financial records.

The Special Master initially found that the DOE had overpaid Loveland and therefore Loveland owed the DOE $841,171.68.  Plaintiffs' counsel submitted a memorandum in response and the Special Master revised his findings thereafter. [Dukes Decl. at ¶ 13.]  The report and recommendation ("R&R") that the Special Master ultimately submitted to the district judge included a finding that Loveland owed the DOE $140,689.28. The R&R, which was dated November 30, 2007, was filed on December 10, 2007.

On March 14, 2008, the district judge issued an Order Adopting in Part, Rejecting in Part, and Modifying in Part, Special Master's November 30, 2007 Report and Recommendation ("3/14/08 Order").  The district judge disagreed with the Special Master's deductions for charges that were not supported by Daily Progress Reports.  The district judge noted that these were not contractually required and that Loveland provided other supporting documents.  The district judge reinstated the $277,397.12 that the Special Master deducted and found that Defendants owed Loveland $136,707.84.  [3/14/08 Order at 3-4.] Judgment was entered pursuant to the 3/14/08 Order on May 6,

2008.

Plaintiffs filed the instant Motion on May 20, 2008. Plaintiffs argue that counsel's hourly rates are reasonable and urge the Court to apply counsel's present hourly rates rather than the prevailing rates at the time counsel performed the work. Plaintiffs note that counsel's requested hourly rates are consistent with awards that counsel received in prior IDEA cases and in other cases. Plaintiffs also submitted declarations from Stanley Levin, Esq., Eric Seitz, Esq., and Irene Vasey, Esq., attesting to the reasonableness of the requested hourly rates. Plaintiffs also assert that the number of hours counsel spent on this case was reasonable because: 1) the case presented novel and difficult issues; 2) the case required a high level of skill; 3) the case required a significant time commitment, precluding other work; 4) the fee is within the range of what is customarily charged for such cases; 5) counsel's fees were primarily contingent; 6) Plaintiffs obtained all of the relief that Loveland's parents sought; 7) Plaintiffs' counsel have significant experience in IDEA and civil rights cases; 8) the case was undesirable; 9) the nature of the case required counsel to be in almost daily contact with Plaintiffs; and 10) the requested fees are consistent with awards in other similar cases. Finally, Plaintiffs argue that their requested costs were reasonable and necessary to the case.

6

In their memorandum in opposition, Defendants argue that the Motion should be denied as untimely.  Plaintiffs did not file the Motion by the deadline which the parties stipulated to and this Court approved.  Further, Defendants argue that the Motion does not comply with the requirement in Local Rule 54.3(d) that counsel's work be itemized according to the litigation phases identified in the rule.

If the Court is inclined to consider the merits of the Motion, Defendants argue that counsel's requested hourly rates are excessive.  Defendants urge the Court to apply Mr. Varady's court approved hourly rates that were in effect at the time he performed the work in this case.  They also argue that the Motion does not provide sufficient justification for Ms. Nakamura's requested hourly rate.  Defendants further contend that the Court should apply liberal deductions to the number hours counsel spent on this case because they did not adequately describe the work that they performed and because of counsel improper block billing.  Finally, Defendants argue that Plaintiffs did not sufficiently describe the expenses they seek because they did not include any supporting documentation.

In their reply, Plaintiffs argue that the Motion was timely because they filed it within fourteen days of the entry of judgment, as required by Local Rule 54.3(a).  Plaintiffs could not file the Motion by the stipulated deadline because, at that

time, their status as the prevailing party in the action was
unsettled.  Further, the events which transpired as a result of
the Special Master's unexpected finding that Loveland had been
overpaid were not within the parties' contemplation when they
executed the Settlement Agreement and stipulated to the deadline
to file the motion for attorneys' fees and costs.

   With regard to counsel's requested hourly rate,
Plaintiffs argue that, under Ninth Circuit case law, the
application of the current hourly rate to all of the work in the
case is an appropriate adjustment to compensate Plaintiffs and
counsel for the delay in receiving payment.  Plaintiffs also
argue that counsel did not use block billing and that the
descriptions of counsel's work are sufficient to allow the Court
to determine whether the work was reasonable and necessary.  In
addition, Plaintiffs point out that the across-the-board
reductions are disfavored in the Ninth Circuit.

   Finally, Plaintiffs argue that the requested costs were
directly related to this case.  Plaintiffs note that Local Rule
54.3 does not require receipts for cost requests, but they
submitted invoices supporting their transcript, filing, and
service fees.  In Plaintiffs' view, all that they must establish
is that the nature and type of costs were reasonable.

**DISCUSSION**

I.   **Timeliness of the Motion**

        Defendants first argue that the Court should strike the
Motion because it is untimely.  The Settlement Agreement states:

> Loveland Academy shall be paid attorney's fees and
> costs in the amounts determined by Magistrate
> Judge Leslie E. Kobayashi after the parties submit
> their motion and supporting and opposing memoranda
> and supporting documents.  The parties agree to
> waive any appeal of and/or objections to the
> Magistrate Judge's Findings and Recommendation.

[Settlement Agreement at 3.]  On July 27, 2004, this Court
approved the parties' stipulation that Plaintiffs would file
their motion for attorneys' fees and costs between sixty and
seventy-five days after the date that the Special Master
submitted his R&R to the district court.  The Special Master
submitted his R&R on November 30, 2007 and it was filed on
December 10, 2008, but Plaintiffs did not file the instant Motion
until May 20, 2008.  Defendants therefore argue that the Court
should strike the Motion as untimely.

        Plaintiffs respond that they could not have filed the
Motion by the stipulated deadline because of the Special Master's
unanticipated ruling that the DOE had overpaid Loveland.
Plaintiffs state that the parties stipulated to the filing
deadlines based on the assumption that: 1) Loveland would be the
prevailing party; 2) the district judge would promptly adopt the
Special Master's recommendations because the parties waived any

objections; and 3) judgment would be entered immediately thereafter. [Reply at 2-3.] The Special Master, however, originally found that Defendants had overpaid Loveland $841,171.68. Plaintiffs submitted a memorandum in response and the Special Master revised his R&R and found that Defendants had overpaid Loveland $140,689.28. [Dukes Decl. at ¶ 13.] Plaintiffs therefore argue that, when the Special Master submitted his R&R to the district judge on November 30, 2007, it was unclear whether they were the prevailing party.

First, the Court notes that, because it approved the parties' stipulation regarding the deadline to file a motion for attorney's fees and costs, the deadline had the force of a court order. If there was any ambiguity regarding whether the deadline still applied in light of the content of the Special Master's R&R, Plaintiffs could have sought clarification from the Court or asked Defendants to stipulate to a new deadline. Plaintiffs also could have moved for an extension from the Court. Instead, Plaintiffs did nothing and merely assumed that the stipulated deadline no longer applied.

Plaintiffs note that Local Rule 54.3(a) "states that the motion for attorneys' fees is to be filed within 14 days of entry of judgment." [Reply at 3 n.2.] The judgment was filed on May 6, 2008 and Plaintiffs filed the instant Motion on May 20, 2008. Plaintiffs therefore contend that the Motion was timely.

Local Rule 54.3(a), however, states: "Unless otherwise provided
by statute or ordered by the court, a motion for an award of
attorneys' fees and related non-taxable expenses must be filed
within fourteen (14) days of entry of judgment." (Emphases
added).  The fourteen-day rule does not apply if the court
provides another deadline, which this Court did when it approved
the parties' stipulation.  Thus, Plaintiffs' were required to
abide by the stipulated deadline.

        Although the Court could recommend that the district
judge deny the Motion as untimely, in light of the importance of
the issues raised in this case and the fact that Defendants had a
full opportunity to respond to the Motion, the Court declines to
do so.  The Court, however, emphasizes that it does not condone
Plaintiffs' and counsel's failure to comply with court ordered
deadlines.  The Court will construe the Motion to include a
motion to extend time to file.  See Fed. R. Civ. P. 6(b)(1)(B).[4]
The Court will consider the untimely Motion if Plaintiffs'
failure to file it by the stipulated deadline was the result of
excusable neglect.  See id.  Plaintiffs did not file the Motion

---

[4] Fed. R. Civ. P. 6(b)(1) provides, in pertinent part:
        When an act may or must be done within a specified
        time, the court may, for good cause, extend the
        time:
            . . . .
                (B) on motion made after the time has expired
                if the party failed to act because of
                excusable neglect.

11

within the time provided because the Special Master's R&R was inconsistent with the parties' expectations and because Plaintiffs believed that their status as the prevailing party in the action was in question.

According to the parties' Settlement Agreement, by the time the Special Master submitted his R&R, Defendants would have already paid Plaintiffs $1,000,000. [Settlement Agreement at 3.] Even if the district judge adopted the Special Master's finding of a $140,689.28 overpayment and required Plaintiffs to repay that amount, Plaintiffs would still have received a net payment of $859,310.72 under the Settlement Agreement. Further, the Settlement Agreement itself provides that Plaintiffs are entitled to attorneys' fees. Thus, Plaintiffs should have known that the Special Master's R&R did not change their status as the prevailing party for attorneys' fees purposes.

Plaintiffs are correct that the Special Master's R&R was drastically different from the parties' expectations. According to the Settlement Agreement, the parties anticipated that the Special Master would find that Defendants owed Plaintiffs more than $1.5 million. [Id.[5]] The Special Master,

_____

[5] Paragraph 5 of the Settlement Agreement provided for the following payment schedule:
         A.   $250,000 shall be paid by May 11, 2004;
         B.   $750,000 shall be paid by June 4, 2004;
         C.   $500,000 shall be paid no later than 30
         days after the Order Adopting the Special Master's
                                             (continued...)

however, essentially found that Plaintiffs were only entitled to $859,310.72.  Although the parties waived their right to file objections to the Special Master's R&R, the district judge reviewed the R&R and ultimately rejected the Special Master's finding of an overpayment.  The district judge therefore rejected and modified the R&R in part.  In light of the unanticipated circumstances surrounding the Special Master's R&R, the Court finds that Plaintiffs' mistaken belief that they could not file the instant Motion by the stipulated deadline constituted excusable neglect.  The Court will therefore consider the merits of the Motion.

## II.  **Compliance with Local Rules**

Defendants also argue that the Motion does not comply with Local Rule 54.3(d), which requires parties to categorize the work counsel performed according to litigation phases.

> Descriptions of work performed shall be organized
> by litigation phase as follows: (A) case
> development, background investigation and case
> administration (includes initial investigations,
> file setup, preparation of budgets, and routine
> communications with client, co-counsel, opposing
> counsel and the court); (B) pleadings; (C)
> interrogatories, document production, and other
> written discovery; (D) depositions; (E) motions
> practice; (F) attending court hearings; (G) trial

---

[5](...continued)
R&R is filed;
    D.    The balance shall be paid no later than
60 days after the Order Adopting the Special
Master's R&R is filed.
[Settlement Agreement at 3.]

preparation and attending trial; and (H) post-trial motions.

Local Rule LR54.3(d)1. (footnote omitted).  If a party fails to comply with this requirement, this Court can recommend that the motion for attorney's fees be denied without prejudice to resubmission of a motion that complies with the rule.[6]

In the present case, Plaintiffs did organize counsel's time by various litigation phases, but Defendants argue that the Motion is deficient because Plaintiffs did not use the categories provided by Local Rule 54.3(d)1.  Plaintiffs separated counsel's time according to following categories: case development and investigation; discovery and document production and review; depositions; settlement; research and draft pleadings; hearing preparation and attendance; post-hearing or post-trial proceedings.  In light of the procedural posture of this case, the Court finds that Plaintiffs' categories satisfy the requirements of Local Rule 54.3(d).

Defendants also argue that the Motion does not comply with Local Rule 54.3(d)3., which states: "In addition to identifying each requested non-taxable expense, the moving party shall set forth the applicable authority entitling the moving party to such expense and should attach copies of invoices and

_____

[6] Defendants also argue that the Court should take deductions from counsel's time because Plaintiffs did not include adequate descriptions of counsel's work.  The Court will address this argument in section III.B. *infra*.

14

receipts, if possible." When a party seeking fees and costs fails to include supporting documentation, this Court can deny the motion without prejudice to resubmission of a motion that complies with the rule. The Motion did not include supporting documentation for Plaintiffs' request for costs. Plaintiffs, however, submitted the documentation with their reply. [Reply, Decl. of Carl M. Varady ("Varady Reply Decl."), Exh. 4.]

Plaintiffs' failure to file the supporting documentation with the Motion is not fatal. The Court, however, does not condone the practice of filing a motion for attorney's fees and costs without supporting documentation. Had Plaintiffs' counsel claimed time spent preparing the untimely documents, the Court would have disallowed such time.

## III. **Calculation of Attorneys' Fees Award**

The parties stipulated that Plaintiffs are entitled to attorneys' fees. <u>Accord</u> 20 U.S.C. § 1415(i)(3)(B)(i)(I); 42 U.S.C. § 1988(b).[7] The Court need only determine the amount of the award.

---

[7] The IDEA provides:

> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs--
> > (I) to a prevailing party who is the parent of a child with a disability[.]

20 U.S.C. § 1415(i)(3)(B)(i). Section 1988 provides that, in an action pursuant to 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"

Under federal law, reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). See Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Hensley, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the factors articulated in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. See Fischer, 214 F.3d at 1119 (citation omitted).

The factors the Ninth Circuit articulated in Kerr are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr, 526 F.2d at 70. Factors one through five have been subsumed in the lodestar calculation. See Morales v. City of San Rafael, 96 F.3d 359, 364 n.9 (9th Cir. 1996). Further, the Ninth Circuit, extending City of Burlington v. Dague, 505 U.S. 557, 567

16

(1992), held that the sixth factor, whether the fee is fixed or contingent may not be considered in the lodestar calculation. See Davis v. City & County of San Francisco, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993).  Once calculated, the "lodestar" is presumptively reasonable.  See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 483 U.S. 711, 728 (1987); see also Fischer, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiffs request the following lodestar amount for work counsel performed in this case:

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|
| Carl Varady | 574.9[8] | $275 | $158,097.50 |
| Candace Chun | 8.3 | $ 80 | $    664.00 |
| Danielle Seress | 0.3 | $ 80 | $     24.00 |
| | | Subtotal | $158,785.50 |
| | | State Excise Tax of 4.167% | $  6,616.59 |
| | | TOTAL | $165,402.09 |

[Motion at 2; Mem. in Supp. of Motion at 13-14; Decl. of Carl M. Varady ("Varady Decl."), Exhs. 1.1-1.9.]

| ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|

---

[8] Plaintiffs' Memorandum in Support of Motion states that Mr. Varady spent 571.9 billed hours on this case.  Based on the supporting documentation, however, it appears that he spent 574.9 hours.  The Court adopts the total from the more detailed supporting documentation.

| Cynthia Nakamura | 54.4 | $250 | $ 13,600.00 |

State Excise Tax of 4.238%    $    576.39

TOTAL    $ 14,176.39

[Motion at 2; Mem. in Supp. of Motion at 14; Decl. of Cynthia S. Nakamura ("Nakamura Decl."), Exhs. 1.1-1.8.]

Mr. Varady and Ms. Nakamura were admitted to the Hawaii State Bar in 1988 and 1982, respectively.  Mr. Varady has litigated numerous IDEA cases in this district court. Ms. Nakamura has less experience than Mr. Varady in IDEA cases. Although she states that she has "appeared before the . . . United States District Court for the District of Hawaii on a variety of matters, including matters brought pursuant to the" IDEA, [Nakamura Decl. at ¶ 5,] the Court's search of the courtroom management/electronic court filing ("cm/ecf") system revealed only one IDEA case in which Ms. Nakamura was counsel of record.

Ms. Chun and Ms. Seress served as Mr. Varady's legal assistants in this case.  They are college graduates who are now attending law school.  Mr. Varady states that their time has previously been reimbursed in IDEA cases at $80 an hour.  [Varady Decl. at ¶ 7.]

A.    **Reasonable Hourly Rate**

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the

18

attorney requesting fees.  See Webb v. Ada County, 285 F.3d 829,
840 & n.6 (9th Cir. 2002).  The reasonable hourly rate should
reflect the prevailing market rates in the community.  See id.;
see also Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir.
1992), as amended on denial of reh'g, (1993) (noting that the
rate awarded should reflect "the rates of attorneys practicing in
the forum district").

        In addition to their own statements, attorneys are
required to submit additional evidence that the rates charged are
reasonable.  See Jordan v. Multnomah County, 815 F.2d 1258, 1263
(9th Cir. 1987).  Plaintiffs submitted declarations from Stanley
E. Levin, Eric Seitz, and Irene Vasey, each of whom have
experience litigating IDEA cases, attesting to the fact that
Mr. Varady's requested hourly rate is reasonable for an attorney
with his competence, skill, and experience.  They also state that
the prevailing range of hourly rates for attorneys with the
skills necessary to litigate this type of case is $200 to $325 or
$350 per hour.  [Motion, Decl. of Stanley E. Levin at ¶ 28, Decl.
of Eric A. Seitz at ¶ 18, Decl. of Irene E. Vasey at ¶ 18.]  None
of the declarations address whether Ms. Nakamura's hourly rate is
reasonable for an attorney with her competence, skill, and
experience.

        Defendants argue that this Court should award Mr.
Varady hourly rates that reflect his rate during the year that he

19

performed the work, not his current hourly rate.  Defendants
acknowledge that the district court has awarded Mr. Varady an
hourly rate of $275, effective January 1, 2006.  [Mem. in Opp. at
7-8 (citing D.C., et al. v. DOE; Civ. No. 05-00562 ACK-BMK
(Report of the Special Master Regarding Plaintiffs' Motion for
Award of Attorneys' Fees and Costs, dated May 8, 2007); D.C., et
al. v. DOE; Civ. No. 07-00362 ACK-KSC (Report of Special Master
Recommending that Plaintiffs' Motion for Award of Attorneys' Fees
and Costs be Granted in Part and Denied in Part, dated May 28,
2008)).]  Defendants point out that the district court previously
awarded Mr. Varady $225 per hour in 2000, and $250 per hour in
2005.  [Id. at 7 (citing James P., et al. v. LeMahieu, et al.;
Civ. No. 99-00861 DAE-LEK (Order Granting Plaintiff's Motion for
Attorneys' Fees and Costs, dated August 28, 2000); K.L., et al.
v. Hamamoto; Civ. No. 03-00334 HG-LEK (Order Adopting, As
Modified, The Report of the Special Master on Plaintiffs' Motion
for Award of Attorneys' Fees and Costs, dated March 31, 2005)).]

        Defendants also argue that Ms. Nakamura's hourly rate
is excessive.  They note that the district court has not
established her hourly rate and they argue that Plaintiffs did
not present evidence of the prevailing market rate for an
attorney with her experience.  Defendants also argue that
Ms. Nakamura's prior experience as a county prosecutor and her
work with the Department of Commerce and Consumer Affairs do not

provide support for her requested rate as a civil litigator,
particularly in IDEA cases.

Plaintiffs respond that the Court can award attorneys'
fees at Mr. Varady's current hourly rate to compensate them for
the lengthy delay in receiving payment.  [Reply at 8-9 (citing
Bell v. Clackamas County, 341 F.3d 858, 868-869 (9th Cir. 2003)
(reversing the district court's award when it used rates that
were effective at a time two years prior to the fee
litigation)).]  Plaintiffs argue that the declarations they
submitted establish that both Mr. Varady's and Ms. Nakamura's
hourly rates are reasonable.

In Bell, the Ninth Circuit stated:

> A court awarding attorney fees must look to
> the prevailing market rates in the relevant
> community.  We have held that the court has
> discretion to apply the rates in effect at the
> time the work was performed.  The court may also
> award rates at an attorney's current rate where
> appropriate to compensate for the lengthy delay in
> receiving payment:
>> Our cases have repeatedly stressed that
>> attorney's fees awarded under this statute
>> are to be based on market rates for the
>> services rendered.  Clearly, compensation
>> received several years after the services
>> were rendered-as it frequently is in complex
>> civil rights litigation-is not equivalent to
>> the same dollar amount received reasonably
>> promptly as the legal services are performed,
>> as would normally be the case with private
>> billings.  We agree, therefore, that an
>> appropriate adjustment for delay in
>> payment-whether by the application of current
>> rather than historic hourly rates or
>> otherwise-is within the contemplation of the
>> statute.

> > _Missouri v. Jenkins by Agyei_, 491 U.S. 274, 284,
> > 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (internal
> > citations omitted).

341 F.3d at 868-69 (some citations omitted).

In _K.L., et al. v. Hamamoto_, this Court found that $250 was a reasonable hourly rate for work that Mr. Varady performed in 2002 and 2003.  See CV 03-00334 HG-LEK, Report of Special Master on Plaintiffs' Motion for an Award of Attorneys' Fees and Costs, filed June 9, 2004.[9]  In _D.C., et al. v. Department of Education, State of Hawaii_, the magistrate judge found that $250 per hour was a reasonable hourly rate for all work Mr. Varady billed prior to January 1, 2006 and that $275 per hour was a reasonable hourly rate for all work he billed from January 1, 2006.  See CV 05-00562 ACK-LEK, Report of the Special Master Regarding Plaintiffs' Motion for Award of Attorneys' Fees and Costs, filed May 8, 2007.[10]

If the Court applies Mr. Varady's rate at the time he performed the work, the Court should award $250 per hour for all work prior to January 1, 2006 and $275 thereafter.  Plaintiffs argue that the Court should award $275 per hour for all of Mr. Varady's time to compensate Plaintiffs for the delay in receiving their fees.  Of Mr. Varady's 574.9 requested hours, he

---

[9] The district judge adopted the report as modified on March 31, 2005.

[10] The district judge adopted the report on June 4, 2007.

worked only 61.75 hours in 2006 and 2007, and 513.15 hours from 2002 to 2005. If the Court awarded Mr. Varady $275 per hour for the duration of this case, that could result in an additional award of $25 per hour for a maximum of 513.15 hours,[11] or up to $12,828.75. The Court finds that additional compensation of approximately that amount is reasonable in light of the delay in receiving payment for work performed up to six years ago. The Court therefore, in the exercise of its discretion, adjusts the award to account for the delay in payment. The Court finds that a reasonable hourly rate for Mr. Varady is $275 for all work.

For similar reasons, and in light of the fact that Ms. Nakamura has less experience in IDEA cases than Mr. Varady has, this Court finds that a reasonable hourly rate for Ms. Nakamura is $250 for all work.

The Court finds that, to the extent that Ms. Chun and Ms. Seress performed services that a paralegal would perform, their requested hourly rates of $80 each are manifestly reasonable.

**B.    Hours Reasonably Expended**

Beyond establishing a reasonable hourly rate, a party seeking attorneys' fees bears the burden of proving that the fees and costs taxed are associated with the relief requested and are

---

[11] The Court, however, has applied significant reductions to the time Mr. Varady billed prior to 2006. See Section III.B., infra.

23

reasonably necessary to achieve the results obtained.  See Tirona
v. State Farm Mut. Auto. Ins. Co., 821 F. Supp. 632, 636 (D. Haw.
1993) (citations omitted).  A court must guard against awarding
fees and costs which are excessive, and must determine which fees
and costs were self-imposed and avoidable.  See Tirona, 821 F.
Supp. at 637 (citing INVST Fin. Group v. Chem-Nuclear Sys., 815
F.2d 391, 404 (6th Cir. 1987)).  A court has "discretion to 'trim
fat' from, or otherwise reduce, the number of hours claimed to
have been spent on the case." Soler v. G & U, Inc., 801 F. Supp.
1056, 1060 (S.D.N.Y. 1992) (citation omitted).  Time expended on
work deemed "excessive, redundant, or otherwise unnecessary"
shall not be compensated.  See Gates, 987 F.2d at 1399 (quoting
Hensley, 461 U.S. at 433-34).

### 1.    General Reductions

        Defendants argue that this Court should reduce
Plaintiffs' fee request because counsel used the block billing
method to record their time and failed to adequately describe the
work they performed.  "The term 'block billing' refers to the
time-keeping method by which each lawyer and legal assistant
enters the total daily time spent working on a case, rather than
itemizing the time expended on specific tasks." Robinson v. City
of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998) (citations
and quotation marks omitted).  Block billing entries generally
fail to specify a breakdown of the time spent on each task.

While there are some instances where counsel included more than one work item in an entry,[12] the items appear to be related and counsel did not group all of the work during an entire day in one entry.  This Court therefore finds that a reduction for block billing is not appropriate in this case.

Local Rule 54.3(d)2. states:

> The party seeking an award of fees must describe adequately the services rendered, so that the reasonableness of the requested fees can be evaluated.  In describing such services, counsel should be sensitive to matters giving rise to attorney-client privilege and attorney work product doctrine, but must nevertheless furnish an adequate non-privileged description of the services in question.  If the time descriptions are incomplete, or if such descriptions fail to describe adequately the services rendered, the court may reduce the award accordingly.  For example, time entries for telephone conferences must include an identification of all participants and the reason for the call; entries for legal research must include an identification of the specific issue researched and, if possible, should identify the pleading or document for which the research was necessary; entries describing the

---

[12] For example, Mr. Varady's billing for June 18, 2002 included the following entries:

| | |
|---|---|
| Research and Draft Pleadings: continue research on conflicting contract terms, purchasing regulations and begin drafting letter to C. Ito re proposed interim agreement | 1.20 |
| . . . . | |
| Research and Draft Pleadings: research conditions for interim contract and draft letter to Chris Ito re interim contract and proposing changes and addendum for client's review and comment | 2.30 |

[Exh. 1.8 to Varady Decl. at 5-6.]

preparation of pleadings and other papers must
include an identification of the pleading or other
document prepared and the activities associated
with such preparation.

The Court has reviewed counsel's time records and finds that the
descriptions therein meet the standards set forth in Local Rule
54.3(d)2.  The Court therefore declines to reduce counsel's hours
for insufficient descriptions of services.

### 2.    **Specific Deductions**

#### a.    **Duplicate Billings**

The general rule is that two professionals cannot both
bill for their attendance at the same meeting.  See, e.g., In re
Mullins, 84 F.3d 459, 467 (D.C. Cir. 1996) (deducting fees
incurred by the two lowest-billing attorneys where three
attorneys billed time spent attending a meeting together).  The
Court will therefore deduct the following duplicative billings
for attending meetings with Mr. Varady: 9.45 hours from
Ms. Nakamura's time; and 0.8 hours from Ms. Chun's time.

#### b.    **Clerical or Ministerial Tasks**

Clerical or ministerial costs are part of an attorney's
overhead and are reflected in the charged hourly rate.  See,
e.g., Sheffer v. Experian Info. Solutions, Inc., 290 F. Supp. 2d
538, 549 (E.D. Pa. 2003).

Ms. Seress billed twelve entries from August 21, 2006
to July 23, 2007 for "monthly update with client re billing

issues and report to" Mr. Varady.  [Exh. 1.4 to Varady Decl. at
22.[13]]  With the exception of the July 23, 2007 entry,
Plaintiffs' counsel deemed all of these entries not billable in
the exercise of counsel's billing judgment.  The July 23, 2007
entry appears to be for identical work to the other eleven non-
billable entries.  Further, to the extent that Ms. Seress
apparently transmitted routine information from the client to
Mr. Varady, the Court finds that this task was ministerial in
nature and that a paralegal's skill was not required.  The Court
therefore finds that Ms. Seress' July 23, 2007 entry of 0.3 hours
is not compensable.

        For the same reasons, the Court finds that Ms. Chun's
ten monthly update entries from October 18, 2005 to July 25, 2006
are not compensable.  [Id. at 21-22.]  The Court will therefore
deduct 4.1 hours from Ms. Chun's time.

        The Court will also deduct 1.0 hours of Mr. Varady's
time for clerical tasks, such as the transmittal of records to
Plaintiffs' accountant.

### 3.    Unrelated Work

        Only counsel's work that is associated with the relief
Plaintiffs requested and that was reasonably necessary to achieve
the results obtained is compensable.  See Tirona, 821 F. Supp. at

_____

        [13] Plaintiff included two documents within Exhibit 1.4, each
of which has individual page numbers.  The Court's citations
refer to the exhibit's page numbers in the cm/ecf system.

636.  Further, the number of hours expended must be reasonable.
See Hensley, 461 U.S. at 433.

The Complaint alleges that the DOE asked Loveland to
enter into an interim agreement after the Contract expired and
that Loveland refused to sign the interim contract because it
objected to the "Gag Rule" included therein.  The Complaint
further alleged that the DOE withheld payment for services that
Loveland rendered in retaliation for Loveland's refusal to sign
the interim contract.  Mr. Varady billed a significant amount of
time for case development and investigation prior to the filing
of the Complaint.  Local Rule 54.3(d)1. states that the case
development, background investigation and case administration
category includes "initial investigations, file setup,
preparation of budgets, and routine communications with client,
co-counsel, opposing counsel and the court".  The Court, however,
finds that the approximately 118 hours that Mr. Varady billed
before he began drafting the Complaint was excessive.  The Court
finds that the number of hours he spent on work associated with
the contract negotiations and expressly addressing the
possibility of litigation is a reasonable amount of time for case
development and investigation in this matter.  The Court finds
that the remainder of Mr. Varady's entries deal with matters that
pertain more to Loveland's operations and are only tangentially
related to the instant case.  The Court will therefore deduct

77.0 hours from Mr. Varady's time.

The Court will also deduct time that counsel incurred after the filing of the Complaint where the work dealt with Loveland's operations that were only tangentially related to the instant case.  For example, the time spent addressing the placement of individual students and Loveland's accreditation.  The Court will therefore deduct 18.0 hours from Mr. Varady's time.

The Court finds the remaining hours were reasonably and necessarily incurred in this case.

**C.    Total Lodestar Award**

Based on the foregoing, this Court finds that Plaintiffs have established the appropriateness of an award of attorney's fees as follows:

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| Carl Varady | 478.9 | $275 | $131,697.50 |
| Candace Chun | 3.40 | $ 80 | $    272.00 |
|  |  | Subtotal | $131,969.50 |
|  | State Excise Tax of 4.167% | | $  5,499.17 |
|  |  | TOTAL | $137,468.67 |

| ATTORNEY | HOURS | RATE | LODESTAR |
|----------|-------|------|----------|
| Cynthia Nakamura | 44.95 | $250 | $11,237.50 |
|  | State Excise Tax of 4.238% | | $    476.25 |
|  |  | TOTAL | $11,713.75 |

The Court declines to adjust the award based on the remaining Kerr factors.

**IV.  Costs**

The parties stipulated that Plaintiffs are entitled to costs.  Accord 20 U.S.C. § 1415(i)(3)(B)(i)(I); 42 U.S.C. § 1988(b).  The Court need only determine the amount of the award. Plaintiffs seek reimbursement of the following costs incurred by Mr. Varady:

| | |
|---|---|
| Filing and service fees | $  464.00 |
| Deposition and hearing transcripts | $2,265.88 |
| Photocopying | $  760.00 |
| Total | $3,489.88 |

[Mem. in Supp. of Motion at 20; Exh. 4 to Varady Reply Decl.] Plaintiffs also seek $111.93 in photocopying costs incurred by Ms. Nakamura.  [Mem. in Supp. of Motion at 20.]

**A.  Filing and service fees**

Plaintiffs request for filing and service fees consists of the following:

| | |
|---|---|
| Filing fee and certification fee to the U.S. District Court - Hawaii for CV 02-693 | $164.00 |
| Filing fee for the Complaint in Loveland Academy v. State of Hawaii to the Circuit Court of the First Circuit | $200.00 |
| Surcharge for Loveland Academy v. State of Hawaii to the Circuit Court of the First Circuit | $ 25.00 |
| Sheriff's service fee for complaint and summons in Loveland v. State, Civil No. 01-1-2544-10 | $ 25.00 |

30

```
Sheriff's service fee for complaint and          $ 50.00
summons in Loveland v. Hamamoto,
CV 02-00693 HG-LEK

                                   Total     $464.00
```

[Exh. 4 to Varady Reply Decl.]

Plaintiffs filed a companion contract case in state court - <u>Loveland, et al. v. State of Hawaii</u>, Civil No. 02-1-2544-10 ("the State Case"). [Settlement Agreement at 1.] Although the State Case was related to the instant action, the Court cannot find that Plaintiffs' costs incurred in the State Case were reasonably and necessarily incurred in the prosecution of the instant case. If Plaintiffs were also the prevailing parties in the State Case, it was incumbent upon them to seek costs before the state court. The Court therefore RECOMMENDS that the district judge DENY Plaintiffs' request for $250.00 in filing and service fees associated with the State Case and GRANT Plaintiffs' request for $214.00 in filing and service fees associated with the instant case.

**B.    Deposition Transcripts**

Plaintiffs seek reimbursement for the following costs associated with depositions in this case:

```
Deposition of Custodian of Records: State    $  172.34
of Hawaii - Department of Accounting &
General Services - on 5/4/04

Deposition of Alida Marie Gandy on 4/30/04   $  795.24
```

Depositions of Debra T. Farmer & Christian   $1,298.30
H. Butt on 4/29/04

                                    Total      $2,265.88

[Exh. 4 to Varady Reply Decl.]  Deposition expenses are typically
charged to a fee-paying client.  Each deposition invoice bears a
notation that the deposition was taken for Civil Number 02-00693
HG/LEK.  There are references to these persons, and to these
depositions, in counsel's time entries.  Thus, the Court finds
that the deposition expenses were reasonably and necessarily
incurred in this case.  The Court therefore RECOMMENDS that the
district judge GRANT Plaintiffs' request for deposition expenses
in full.

    C.   **Copying Costs**

Plaintiffs also request $760.00 for in-house and
outsourced copying expenses that Mr. Varady incurred.  Mr. Varady
states that he charges $0.10 per page for in-house copying.  The
copies include pleadings that were filed with the district court
and served.  Mr. Varady asserts that his copying costs were
reasonable and directly related to this action.  [Varady Decl. at
¶ 14.]  Mr. Varady does not provide any further information about
his copying costs.

Plaintiffs also seek $111.93 in photocopying costs that
Ms. Nakamura incurred.  This includes in-house copies of
pleadings that were filed with the district court and served.
Ms. Nakamura asserts that her copying costs were reasonable and

32

directly related to this action.  [Nakamura Decl. at ¶ 18.]
Ms. Nakamura does not provide any further information about her
copying costs.

Copying expenses are typically charged to fee-paying
clients and Mr. Varady's per page rate for in-house copies is
reasonable.  See Local Rule LR54.2(f)4. ("The practice of this
court is to allow taxation of copies at $.15 per page or the
actual cost charged by commercial copiers, provided such charges
are reasonable.").  Ms. Nakamura, however, did not provide
information about her per page in-house copying rate and
Mr. Varady did not provide any information about his outsourced
copying.  Mr. Varady and Ms. Nakamura only state that the copies
included pleadings in this case.  Based on the information
provided, the Court cannot find that counsel's copying expenses
are reasonable.  Over $800 for copying pleadings is excessive
and, because counsel included items from the State Case in their
filing and service expenses, the Court is concerned that they may
also have included items from the State Case in their copying
expenses.  The Court therefore FINDS that, based on the current
record, Plaintiffs' copying costs are not compensable.  The
Court, however, will allow Plaintiffs to submit further
declarations and/or supporting documentation justifying counsel's
copying expenses.

D.    __Total Award__

The Court finds that Plaintiffs have established that they are entitled to an award of the following costs, which Mr. Varady's office incurred:

| | |
|---|---|
| Filing and service fees | $  214.00 |
| Deposition and hearing transcripts | $2,265.88 |
| Total | $2,479.88 |

The Court therefore RECOMMENDS that the district judge award Plaintiffs $2,398.23 in costs.

### CONCLUSION

In accordance with the foregoing, this Court, acting as Special Master, FINDS and RECOMMENDS that Plaintiffs' Motion for Award of Attorneys' Fees and Costs, filed on May 20, 2008, be GRANTED IN PART AND DENIED IN PART.  The Court recommends that the district judge award Plaintiffs $149,182.42 in attorney's fees and $2,479.88 in costs, for a total award of $151,662.30. These amounts represent $137,468.67 in attorney's fees and $2,479.88 in costs to Mr. Varady's office, and $11,713.75 in attorney's fees to Ms. Nakamura's office.

The Court grants Plaintiffs leave to file supplemental documentation in support of their request for copying costs by **August 20, 2008.**

IT IS SO FOUND AND RECOMMENDED.

34

DATED AT HONOLULU, HAWAII, August 13, 2008.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

LOVELAND ACADEMY, LLC, ET AL. V. PATRICIA HAMAMOTO, ET AL; CIVIL
NO. 02-00693 HG-LEK; REPORT OF SPECIAL MASTER ON PLAINTIFFS'
MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS